953 A.2d 1107 (2008)
P.F., Appellant,
v.
N.C., Appellee.
Nos. 06-FM-1609, 06-FM-165.
District of Columbia Court of Appeals.
Argued May 15, 2008.
Decided August 7, 2008.
*1108 Lorane F. Hebert and Jessica L. Ellsworth, Washington, with whom Barbara McDowell, Legal Aid Society of the District of Columbia, was on the brief, for appellant.
Curt S. Hansen for appellee.
Joan S. Meier, Heather Anderson and Marva Deskins filed a brief amici curiae for the Domestic Violence Legal Empowerment and Appeals Project, et al., in support of appellant.
Before GLICKMAN and FISHER, Associate Judges, and SCHWELB, Senior Judge.
SCHWELB, Senior Judge:
On December 21, 2005, following an evidentiary hearing, the trial judge awarded legal custody of N.J.C., then ten years of age, and his younger brother, R.B.C., then aged seven, to their father, N.C. The boys' mother, P.F., appeals, claiming primarily that in determining the best interests of the children, the trial judge failed to accord appropriate weight to the father's physical abuse of the mother, which was reflected in the judge's finding in an earlier proceeding that the father had committed two intrafamily offenses against her. The father responds that there is ample support in the record for the trial judge's finding that the award of custody to him was in the boys' best interest; that there was no legal error; and that the judge's ruling constituted a sound exercise of his discretion.
The decision that the trial judge had to make was by no means an easy one, for there is evidence that would support an award of custody to either parent. Indeed, in her Reply Brief, the mother explicitly disclaims any suggestion that "a trial court, applying the correct legal standard, would be compelled to award custody to [the mother] over [the father]." (Emphasis *1109 added.) Rather, the mother requests a remand with directions to the trial judge to apply what she claims to be the correct legal standard and, in particular, to accord appropriate weight to the District's statute-based policy of disfavoring an award of custody or visitation rights to a parent who has committed an intrafamily offense.
In his order awarding custody to the father, the trial judge expressly found that the father committed two intrafamily offenses, and he cited the applicable statutory provisions, which are discussed infra in Parts II A and II B of this opinion. Nevertheless, for the reasons stated below, we cannot be confident that the judge gave the requisite consideration to the substantial connection, explicitly recognized by our legislature, between the presence in a family of spousal abuse and the determination as to which parent should be awarded custody.
In addition, the trial judge made no express mention of the uncontradicted evidence that both boys wished to live with their mother. Further, in rejecting the recommendation of the boys' guardian ad litem (GAL) that the boys be placed in the custody of the mother, the judge relied in part upon a ground that was clearly erroneous. Finally, we conclude that the trial judge erred in denying the mother, who was proceeding in forma pauperis, free transcripts of the trial court proceedings, for we cannot agree with the judge's view that the mother had failed to show the existence of any substantial question on appeal.

I.
The mother and father of the two boys whose custody is at issue met in the spring of 1992. They became romantically involved, but they never married. In November 1994, the mother moved into the father's home in northwest Washington, D.C., and she lived there until August of 2004 with the father and the couple's two sons. During the time period that the mother and father were together, the father, a contractor, was the primary breadwinner. The mother remained at home and cared for the children.
The relationship between the mother and the father was somewhat stormy, and the two of them disagreed on several aspects of their children's upbringing. The mother insisted that the boys be schooled at home, rather than at a public school. Although he initially consented to the home-schooling and to the mother's serving as their teacher, the father subsequently expressed apprehension that the home-school curriculum lacked structure and that it failed to provide sufficient emphasis on academic subjects. In addition, the father became concerned because the mother was still breast-feeding R.B.C. (the younger boy) when he was five years old and because R.B.C. was not yet toilet-trained at the age of seven.
On August 16, 2004, the mother filed a petition for a civil protection order (CPO). In her petition, she alleged that on three separate occasions, the father committed acts of domestic violence against her. A Superior Court judge issued a temporary protection order (TPO) in which he awarded the mother temporary custody of the children, with no visitation rights for the father pending a hearing on the request for a CPO. In the TPO, the judge ordered the father to refrain from contacting the mother and to stay at least 100 feet away from the mother, from her home, and from the house of a friend with whom the mother was staying. A hearing date was set, but the judge dismissed the case for want of prosecution after neither of the parties appeared.
In August 2004, shortly after she secured the temporary protection order, the *1110 mother left the District of Columbia for her family's home in Wisconsin, taking her sons with her. The mother did not inform the father that she was going to leave the District with the children and, following her arrival in Wisconsin, she refused to disclose their whereabouts. On January 6, 2005, a warrant was issued for the mother's arrest on felony parental kidnapping charges. On January 14, 2005, the father filed a complaint seeking custody of the children and an emergency motion for temporary custody. Following an ex parte hearing held on the same day, the trial judge issued an order awarding the father temporary custody of the boys. On her return to the District of Columbia, the mother was arrested and charged with felony parental kidnapping, but a nolle prosequi was entered on April 14, 2005. From January 2005 until the present, the children have been in the father's custody. After the father was granted temporary custody, he enrolled the children at a local public school.
In February 2005, the mother filed a motion to reinstate her petition for a CPO, and on May 18, 2005, the trial judge held an evidentiary hearing on the petition. The judge heard testimony from both parents, and he admitted into evidence photographs of the mother showing that she had a black eye and bruising on her arm.[1] Based on his consideration of the testimony from the parties and the photographs, the judge found by a preponderance of the evidence that the father committed intrafamily offenses against the mother on June 15 and August 16, 2004.[2] The judge specifically found that during the June 15 incident, the father pulled the mother down a hallway in their home and that, using his closed fist, he punched her in the face and on the arm. The father's attack left the mother with a black eye and bruises, as depicted in the photographs. The judge found that in the August incident, the father slapped the mother in the face and shouted at her for over an hour.[3] The judge granted the mother's petition for a CPO, but he ordered that the children remain in the father's custody. The mother was granted unsupervised visitation rights.
On October 5 and 6, 2005, the same judge presided at the trial of the parents' competing claims for custody. The judge took judicial notice of the prior CPO proceedings. The mother and father both testified, as did several other witnesses.[4] *1111 The father categorically denied that he had ever assaulted or abused the mother, but the judge obviously disbelieved his testimony on this point.
On November 10, 2005, the GAL issued an eleven-page report in which he examined the factual and legal issues relating to the best interest of the two children. In summary, the GAL recommended as follows:
Based on my review of the evidence, the statutory factors to be considered in determining the best interest of the children, and relevant case law, it is my conclusion that the best interests of the two children will be served by [the mother] having sole legal custody of the children, with substantial visitation for [the father].
On December 21, 2005, the trial judge issued an order in which he awarded permanent legal and physical custody of the children to the father, with visitation rights for the mother. The judge noted that the statutory presumption[5] that joint custody is in a child's best interest does not apply when the court has found that a parent seeking joint custody has committed an intrafamily offense. The judge also recognized, quoting D.C.Code § 16-914(a-1) (2001), that when a judicial officer has found that a parent seeking custody has committed an intrafamily offense, "any determination that custody ... is to be granted to the abusive parent shall be supported by a written statement by the judicial officer specifying factors and findings which support that determination." Beyond this, however, the judge did not expressly address the question whether, and to what extent, a finding that a parent had committed intrafamily offenses affected his claim for sole custody.
After discussing the evidence, the judge found that from the time that the father was awarded temporary custody in January 2005, he "ha[d] been an exemplary parent, consistently making decisions with the best interest of the minor children in mind." The judge found that the boys had not been abused by the father, that the father was a fit and proper parent,[6] and that it was in the children's best interest to be in the father's custody.
The judge concluded, on the other hand, that "the evidence strongly suggests that [the mother] did not have in mind the best interest of the minor children when she made decisions." Specifically, the judge found that the mother did not act in the children's best interest when she insisted on home-schooling and refused to modify the curriculum; when she took the children to live with her in Wisconsin without notice to the father; and, when, in Wisconsin, she failed to secure medical and dental care for the children, to provide them with proper schooling, or to arrange for continued speech therapy for the younger boy, who had been receiving such therapy while the family was intact and living in the District of Columbia. The judge did not credit the mother's testimony that her reason for taking the children to Wisconsin was her alleged fear that the father would attempt to harm her again, and he concluded that any such fear would have been unwarranted.[7]
In ruling in the father's favor, the judge explicitly stated his disagreement with the GAL's recommendation that custody of the children should be awarded to the mother. In the judge's view, the GAL's application of the statutory factors was "somewhat simplistic," and the GAL's analysis improperly *1112 gave equal weight to each of the statutory factors.
Following the entry of the trial court's order, the mother filed a pro se appeal, No. 06-FM-165. She was permitted to proceed in forma pauperis. The mother requested transcripts of the trial court proceedings, but the judge denied her request, as well as a motion for reconsideration of that denial. The judge concluded that the mother had failed to show "a substantial question on appeal that would not be frivolous." The mother filed a second appeal from the order denying the transcripts (No. 06-FM-1609). Subsequently, pro bono counsel obtained the necessary transcripts for her. The two appeals were consolidated, and both are now before us.

II.
The law of this jurisdiction requires a judicial officer to exercise considerable caution before granting custody or visitation rights to a parent who has committed an intrafamily offense. Our custody statute explicitly directs the court to consider "evidence of an intrafamily offense" in identifying the custody arrangement that would be in a child's best interest, D.C.Code § 16-914(a)(3), and such evidence is obviously considered a significant factor, unfavorable to the party who committed such an offense. If a judicial officer awards custody or visitation rights to a parent who has committed an intrafamily offense, the statute requires the officer to make specific written findings explaining his or her reasons for doing so. A parent who has committed an intrafamily offense has the burden of proving that "visitation will not endanger the child or significantly impair the child's emotional development." D.C.Code § 16-914(a-1). Because such a finding is mandated before an abuser can be granted visitation rights, the same requirement surely applies, a fortiori, where, as here, an adjudicated intrafamily offender is seeking custody.
In this case, the mother cannot and does not claim that the judge was unaware of the father's intrafamily offenses, nor can she assert with assurance that the judge did not take into consideration the statutory restrictions on awarding custody to an abuser. Further, § 16-914(a)(3) enumerates seventeen factors which the court must consider in awarding custody, and it is unrealistic to expect a judge to write extensively about each factor that is in dispute. Nevertheless, reading the judge's order as a whole, we are unable to state with confidence that full consideration and due weight were accorded to the District's policy disfavoring a custody award to an abuser in the absence of proof that such an award is consistent with the safety and well-being of the child or children, and the judge's order does not expressly address the point. Accordingly, and for the additional reasons enumerated below, we remand the case to the trial judge for reconsideration of his decision in conformity with the statute and with the principles set forth in this opinion.
A. The Council of the District of Columbia has enacted several statutory provisions relating to child custody which constrain a court's discretion to award custody or visitation to a parent who has committed an intrafamily offense. These enactments reflect the Council's awareness that exposure to an abusive parent may threaten the child's physical and emotional well-being.
In the Evidence of Intrafamily Offenses in Child Custody Act of 1994, D.C. Law 10-154 [the 1994 Act], the Council added "evidence of an intrafamily offense as defined in [D.C.Code] 16-1001(5)" to the list of statutory factors that "the court shall consider" in determining a child's best interest with regard to custody. *1113 D.C.Code § 16-914(a)(3) (emphasis added).[8] As a result of that addition, the trial court must expressly weigh the intrafamily offense in making a custody award. See Dumas v. Woods, 914 A.2d 676, 679 (D.C. 2007) ("A failure by the trial court to make findings as to each of the relevant factors [in Section 16-914(a)(3)] requires remand.").
Where the issue is a critical one, trial judges must explicate their reasoning in considerable detail. In Ysla v. Lopez, 684 A.2d 775 (D.C.1996), the question was whether joint custody of a minor child should be awarded when the child's parents were not married. The trial judge, after finding that communication between the parents had broken down, nevertheless ruled as follows:
In the end, considering the child's wishes, the wishes of the parents, everyone's interaction and interrelationship, the child's adjustment, the mental and physical health of all the parties, the good information, the bad information, the child's bastion of security, the parties' finances, their stability and their capabilities, it is this [c]ourt's conclusion that physical custody of B. is and shall be awarded to her mother, that joint legal custody is awarded to both parties.
Id. at 781. Notwithstanding the trial judge's recitation of the statutory factors which she had considered, this court remanded the case for further elaboration by the judge:
The above-quoted passage provides this court only with a list of factors; it does not show why the trial court resolved in the way it did the considerable tensions which the findings of facts show existed among those factors. In particular, the court's finding concerning the parents' inability to communicate and cooperate with each other, at the time the joint custody award was entered in this case, was identified [by this court] as "most important" to an award of joint custody. The articulation of the court's reasoning is important because it aids the appellate court in conducting its review and supplies to the parties information that may persuade them as to the correctness of the trial court's decision. Such express reasoning can also function as a guide to what changes in circumstances would or would not support a modification of the order.
Id. (citation omitted). Just as the inability of the parents to communicate in Ysla warranted more explicit reasoning before joint custody should be ordered, so in this case, the father's commission of intrafamily offenses against the mother required explicit evaluation before an award of sole custody could properly be made to him.
In the 1994 Act, the Council went on to require that
[i]f the judicial officer finds by a preponderance of the evidence that a contestant for custody has committed an intrafamily offense, any determination that custody or visitation is to be granted to the abusive parent shall be supported by a written statement by the judicial officer specifying factors and findings which support that determination.
D.C.Code § 16-914(a-1). In this provision, the Council also directed that, when an intrafamily offense has occurred, the court "shall only award visitation if the judicial officer finds that the child and custodial parent can be adequately protected *1114 from harm inflicted by the other party." Further, as we have noted, the perpetrator of an intrafamily offense has "the burden of proving that visitation will not endanger the child or significantly impair the child's emotional development." Id.
The legislative history of the 1994 Act is consistent with the statutory language; it was the Council's intent that a parent's commission of an intrafamily offense should weigh against that parent with regard to custody or visitation. In its Report on the Act, the Judiciary Committee identified the risks to a child living in a household in which domestic abuse has occurred, whether or not the child has been a target of the abuse:
Research reveals that children exposed to spouse abuse often suffer emotional and physical harm. Research findings also indicate that even where these children do not directly witness the abuse, their knowledge of domestic violence can lead them to experience shock, fear, guilt, impairment of self-esteem and impairment of developmental and socialization skills.
See COUNCIL OF THE DISTRICT OF COLUMBIA, COMMITTEE ON JUDICIARY, REPORT ON BILL 10-7, THE "EVIDENCE OF INTRAFAMILY OFFENSES IN CHILD CUSTODY CASES ACT OF 1994," April 27, 1994 (hereinafter Judiciary Report), at 3. The Judiciary Committee explained that, while existing law was broad enough to allow the court to consider a parent's intrafamily offense in a dispute over custody or visitation, the new law would require the court to do so. The Committee noted that the new law would respond to concerns expressed in the 1992 Final Report of the District of Columbia Courts' Task Force on Racial and Ethnic Bias and Task Force on Gender Bias in the Courts that domestic violence was not receiving sufficient consideration in litigation over child custody. See Judiciary Report on 1994 Act, at 3-4. In light of the new enactment, a court could no longer simply "determine that an intrafamily offense has occurred, but find that there is insufficient proof that said domestic violence is detrimental to the children involved." Id. at 8; see id. at 4 (describing the proposed statute as "explicitly recogniz[ing] domestic violence as relevant in all child custody disputes"). On the contrary, a parent who had committed an intrafamily offense would now have to show that an award of custody to that parent was not harmful to the child.[9]
B. The Council again addressed the relationship between domestic violence and child custody when it considered the Joint Custody of Children Act of 1996, D.C. Law 11-112 (the 1996 Act). In that Act, the Council established "a rebuttable presumption that joint custody is in the best interest of the child or children." This presumption was to be applied to all cases except those in which a court has found "an intrafamily offense," "child abuse," "child neglect," or "parental kidnapping." D.C.Code § 16-914(a)(2). In those categories of cases, the Council created "a rebuttable *1115 presumption that joint custody is not in the best interest of the child or children[.]" Id. (emphasis added).
The 1996 Act did not contain any provision explicitly identifying the legal consequences that would follow if the presumption in favor of joint custody is rendered inapplicable because, inter alia, one of the parents has committed an intrafamily offense. It would be patently illogical, however, to suppose that the Council intended in such circumstances that spouse abuse would be a neutral factor and that both parents  the abuser and the victim  should be presumed to be equally suitable candidates for sole custody. After all, the Council was legislating against the backdrop of Section 16-914(a-1), which, as we have noted, already required courts to consider the commission of an intrafamily offense against the parent who committed it. The Council surely did not intend, for example, that a parent who abused or neglected a spouse although not eligible for joint custody by virtue of Section 16-914(a)(2), would nevertheless be as appropriate a candidate for an award of sole custody as the abused parent. See, e.g., George v. Dade, 769 A.2d 760, 762-63 (D.C. 2001) (noting that statutes are to be construed to avoid "absurd or plainly unjust results").
C. Although the trial judge noted his own earlier findings in the CPO that the father had committed two intrafamily offenses against the mother, we cannot be confident that he engaged in the inquiry required by District of Columbia law whenever a parent has been found to have committed an intrafamily offense. Notwithstanding the mandate of Section 16-914(a)(3) that courts "shall consider" a parent's commission of an intrafamily offense as a "relevant factor" in determining a child's best interest with regard to custody, there is little explicit discussion in the judge's order regarding the part that the father's abusive conduct played in the judge's calculus. We agree with the mother that the findings and evidence in the parties' CPO trial before the same judge, which took place only a few months earlier, raised particular concern about the children's well-being. These offenses involved physical violence by the father; on one occasion, he punched the mother in the face with a closed fist and gave her a black eye. The abuse was relatively recent in time, and it occurred while the children were in the home. Indeed, the incident woke at least one of the boys. On one of these occasions, according to the mother, the father persisted in his abuse despite the older boy's pleas that the father go back to bed.[10]
The mother contends that in his order, the judge ignored the requirements of Section 16-914(a-1). She asserts that he neither justified the award of sole custody to the father with "a written statement ... specifying factors and findings which support that determination," nor required the father to bear the burden of proving that such an award would "not endanger the [children] or significantly impair the [children's] emotional development." D.C.Code § 16-914(a-1). According to the mother,
the judge's Order does not include the sort of "written statement" that Section 16-914(a-1) requires. At a minimum, any such statement must reflect that the court specifically considered the physical and emotional risks to a child's *1116 placement with a parent who committed an intrafamily offense and came to a reasoned conclusion as to why those risks should be disregarded in the circumstances of the particular case. See Judiciary Report on 1994 Act, at 4 (explaining that Section 16-914(a-1) "[s]pecifically requires the court to state in writing the specific factors and findings which support any determination that custody or visitation is to be granted to the abusive parent"). Here, although the court offered some general reasons for preferring [the father] over [the mother] as the custodian of the children, the court gave no indication that [the father's] intrafamily offenses had been factored into that analysis.
Nor does the Custody Order reflect that the court gave any consideration to the risks to [the mother] of an arrangement under which her abuser would have custody of the children and she would have visitation. Such an analysis is an essential component of any decision awarding custody to the perpetrator of intrafamily offenses. The Council provided in Section 16-914(a-1) that, when an intrafamily offense has been found, the court "shall only award visitation if the judicial officer finds that the child and custodial parent can be adequately protected from harm inflicted by the other party." Whether the court is considering awarding an abusive parent custody or only visitation, the court is obligated to undertake the same consideration of the safety of the abused parent. The court failed to do so here.
The mother's criticism of the judge's order goes further than we are prepared to go. The judge's findings relating to the father's concern for his sons and the excellent care that he provided to them are at least implicit "factors and findings that support his determination" that it was in the boys' best interest to be with the father. The judge was obviously of the opinion that the mother was no longer in danger from the father. There is evidence in the record that could persuade a reasonable fact-finder that notwithstanding the father's abusive conduct, the boys would be better off with their father than with their mother.
We have no doubt that, in awarding custody to the father, the trial judge did his best, as parens patriae, to decide the case in the best interests of the children. But if the judge factored the father's intrafamily offenses into his calculus, it is difficult to find in his order sufficient assurance that he attached the kind of significance to these offenses that our statutory law requires. It may be that the judge incorporated into his analysis the statutory direction that the father's intrafamily offenses should count against the father in determining which parent should have custody, but if the judge did give this factor consideration, he clearly did so sub silentio. In any event, the discussion in the judge's order consists primarily of a balancing of other factors  e.g., decisions as to schooling and health care  without any suggestion that in light of the intrafamily offenses, the father had a significantly more difficult route to an award of custody than he would have had if there had been no abuse. What is troubling here, as in Ford v. Ford, 700 So.2d 191, 196 (Fla.Ct.App.1997), is "the absence of any meaningful analysis of the ... evidence of domestic violence[.]" Accordingly, we lack the requisite assurance that the purposes of this important legislation were duly carried out by the trial judge.
"[T]he exercise of [judicial] discretion must be founded on correct legal principles." Wilkins v. Ferguson, 928 A.2d 655, 666 (D.C.2007) (citing Link v. District of Columbia, 650 A.2d 929, 934 (D.C. 1994)). We reiterate that on the record before us, an award of custody to the father was not an impermissible outcome, *1117 for the judge could reasonably find that even considering the father's intrafamily offenses, the boys would be safe in his custody and that it was in their interest for the judge to award custody to the father. We also recognize that the mother, as the appellant, has the burden of showing that the trial judge committed error or abused his discretion. See In re E.T.A, 880 A.2d 264, 265 (D.C.2005); Cobb v. Standard Drug Co., 453 A.2d 110, 111 (D.C.1982). Nevertheless, and especially given the high stakes in this litigation  the future well-being of two young boys is at issue  we conclude that our uncertainty as to whether the judge applied the correct legal standard requires us to remand the case for further consideration.

III.
Our disposition in Part II of this opinion of the mother's principal contention is reinforced by several other considerations, as noted below:
A. Section 16-914(a)(3) directs a court to consider, in determining a child's best interest with regard to custody, "the wishes of the child as to his or her custodian, where practicable." Indeed, this is the first of the seventeen statutory factors. It is undisputed that both boys expressed a preference to live with their mother. In his order, however, the judge, in awarding custody to the father, did not address or mention, the children's preferences.
Neither of the boys testified, and the judge did not hear from them directly. The GAL, however, submitted a report to the court in which he disclosed, among other things, that "[t]he children wish to live primarily with (the mother) but to have visitation with their father." At trial, the GAL confirmed that both boys had expressed a preference to live with their mother, and he testified that they did not appear to have been coached.
The mother argues, and we agree, that the judge was not entitled to ignore the children's wishes merely because of their respective ages, ten and seven. A "child's chronological age ... is not necessarily conclusive," and "[c]hildren as young as four years old have had their preferences followed with their desires called an important factor." In re A.R., 679 A.2d 470, 479 n. 14 (D.C.1996) (quoting 1 Jeff Atkinson, Modern Child Custody Practice, § 4.44, at 295-96 (1986) (internal quotation marks omitted)); see also In re I.B., 631 A.2d 1225, 1232 (D.C.1993) (recognizing that children twelve and eight years old "were certainly old enough" to express an opinion regarding what was in their best interest); Shelton v. Bradley, 526 A.2d 579, 581 (D.C. 1987) (observing that a child "at nine years old was undoubtedly capable of expressing her feelings about her father and her grandmother, as well as her thoughts on the issue of custody").[11]
The judge was not required to follow the children's wishes with regard to custody, but he was obliged to include them in his calculus. Here, if the judge considered the boys' preferences, he wrote nothing about the subject in his order. The judge's failure to address explicitly this important statutory factor reinforces the need for a remand.[12]
*1118 B. The GAL, who had been appointed by the court to represent the interests of the two boys, prepared an eleven-page Report in which he recommended, as we have noted, that the mother be awarded custody of the boys and that the father be granted visitation rights. In his Report, the GAL addressed each of the statutory factors. He subsequently testified at an evidentiary hearing, and he was vigorously cross-examined by the father's attorney.
The judge rejected the GAL's recommendation as to custody, in substantial part, because in the judge's view, the GAL followed a "somewhat simplistic" methodology by allocating each statutory factor to the father, to the mother, or to neither, and by then "conclud[ing] that the party with the highest number of allocations should be granted custody."
The mother concedes that if the GAL had actually employed the methodology that the judge described, the court might have been justified in rejecting it as "simplistic." But the mother argues, and we agree, that the judge erred in finding that the GAL approached his task in that manner. On the contrary, the GAL made it clear in his Report that his methodology was entirely different:

Providing my conclusions as to each factor is not meant as a simple score keeping exercise, with one party having more factors in their favor than the other parent. I am aware that a balancing of the factors is precisely that, a balancing. Some factors are clearly more important than others. Where the case law provides guidance as to how to weight a particular factor, I have so stated. I have considered and weighted the factors as best I could in light of the evidence that I reviewed and as guided by the relevant case law I was able to find.
(Emphasis added.) Nothing in the body of the report suggests that the GAL failed to adhere to the methodology that he described, and the father's counsel, while vigorously disputing the GAL's conclusion, made no attempt at trial to impeach the GAL's description of his methodology or to demonstrate that the GAL had automatically given each of the statutory factors equal weight in his analysis. We must therefore conclude that the judge's finding as to the GAL's methodology was clearly erroneous.[13]

*1119 IV.
A. The trial judge denied the request of the mother, who was proceeding in forma pauperis, to obtain transcripts of the trial court proceedings. The judge ruled that the mother failed to show "a substantial question on appeal that would not be frivolous." We do not agree. The discussion in Parts II, III A and III B of this opinion of the substantive issues raised by the mother's initial appeal (which was from the award of custody to a parent who had committed two intrafamily offenses) demonstrates that the appeal was not insubstantial or frivolous.
In Hancock v. Mutual of Omaha Ins. Co., 472 A.2d 867, 871 (D.C.1984), a case involving a claim for insurance benefits, this court ruled that a "losing civil litigant who proceeds in forma pauperis has the burden of convincing the trial court that a substantial question exists on appeal in order to get a free transcript." We made it clear, however, that this standard is not an onerous one. We relied on Lee v. Habib, 137 U.S.App. D.C. 403, 424 F.2d 891 (1970), a case in which the federal appellate court held that an appellant proceeding in forma pauperis is entitled to a free transcript "if the trial judge or a circuit judge certifies that the appeal is not frivolous (but presents a substantial question)." 137 U.S.App. D.C. at 415, 424 F.2d at 903 (quoting 28 U.S.C. § 753(f)). The court thus equated "substantial" with "not frivolous." Hancock further instructs that a close question regarding whether an appellate issue is non-frivolous is sufficient to warrant providing a free transcript to an appellant proceeding in forma pauperis. "Doubts about substantiality of the questions on appeal and the need for a transcript to explore them should be resolved in favor of the petitioner." Hancock, 472 A.2d at 871 (quoting Lee, 137 U.S.App. D.C. at 417, 424 F.2d at 905) (internal quotation marks omitted).
In the present case, the mother's contentions on appeal could not have been adequately presented without the record of the trial proceedings, and the trial judge's denial of transcripts, had it not been remedied, would effectively have deprived her of a full appellate examination of those issues solely because of her poverty. This is so because a judgment of the trial court is presumed to be correct, and it is incumbent upon the appellant to provide this court with a record which affirmatively shows that error occurred. E.T.A., 880 A.2d at 265; see also McGinnis v. Gustafson, 978 F.2d 1199, 1201 (10th Cir.1992) (explaining that an appellant's inability to provide a transcript "raises an effective barrier to informed, substantive appellate review"). We are satisfied that the mother's appeal raised substantial non-frivolous issues that could not be properly resolved without the requested transcripts. Indeed, we have decided some of these questions in the mother's favor, and we have ordered a remand  a step we would not take if the appeal were frivolous. Accordingly, we conclude that the trial judge abused his discretion in denying the mother's request for transcripts.

V.
For the foregoing reasons, in No. 06-FM-165, the case is remanded to the trial court for further proceedings consistent with this opinion.[14] In No. 06-FM-1609, the judgment is reversed, and the trial *1120 court shall order payment to the mother of the costs of the transcripts in question.[15]
So ordered.[16]
SCHWELB, Senior Judge, concurring:
Although I join in the opinion of the court, of which I am the author, I think it appropriate to discuss briefly an additional consideration which played a significant role in persuading me, in this fairly close case, to vote to remand rather than to affirm.
As the court explicitly recognizes, there is certainly evidence in this record that renders an award of custody to the father quite plausible. I have no doubt that the trial judge addressed his difficult task conscientiously, and that he made that award on the basis of his bona fide belief that it was in the interest of the two boys. I cannot say that this belief was unreasonable. Indeed, counsel for the mother do not claim that the record required the judge to award custody to the mother. The question before us is whether, in ordering what may indisputably be a permissible outcome, the judge relied on an incorrect legal standard. The court reaches its conclusion that the judge may well have applied an incorrect standard largely because of the absence from his order of "any meaningful analysis of the evidence of domestic violence." Opinion of the court at [17] (quoting Ford v. Ford, 700 So.2d 191, 196 (Fla.Ct.App.1997) (ellipsis omitted)).
But there is an additional and equally persuasive reason for my concern that the trial judge's resolution of the admittedly difficult case before him may not have been based on correct legal principles. In declining to authorize a transcript of the proceedings for the mother, who was proceeding in forma pauperis, the judge characterized her appeal as frivolous. That characterization, as the opinion of the court points out, is demonstrably unwarranted. In particular, as set forth in Part II of the court's opinion, the statutory law of the District makes it abundantly clear that a parent's commission of intrafamily offenses must be a significant factor in a court's custody calculus, for the legislature has recognized the danger that spousal abuse may often affect the safety and welfare of the children.
In light of that statutory policy, it surely follows that an appeal from an order awarding custody to an abuser will seldom, if ever, be "insubstantial." When the trial judge characterized this appeal as "frivolous," he cannot, in my opinion, have sufficiently factored into his analysis the unequivocal policy adopted by the legislature in this regard.[1] It has even been suggested *1121 that "a batterer is unfit for any type of custody." Developments in the Law  Battered Women and Child Custody Decisionmaking, 106 HARV. L.REV. 1597, 1613 n. 119 (1993). I am not prepared to go so far, but we should not hesitate to say that in most instances, the contention that a batterer is unfit must be taken seriously and not dismissed as insubstantial.
I recognize that the judge's denial of the transcripts because of the perceived frivolous nature of the appeal occurred after his award of custody, so that technically, the judge's dismissive characterization is not a part of the record of the mother's appeal from that award. The two appeals have been consolidated, however, and in my view, the two orders on appeal  the award of custody to the father and the denial of the transcripts  are parts of a single continuum based on the judge's consistent perception of the nature and merits of the dispute. Although reliance on the absence of explicit analysis of the father's intrafamily offenses in the judge's order, standing alone, makes this a somewhat close call, I agree that this omission precludes affirmance of the custody decision and warrants a remand. For me, however, the judge's description of the appeal from the denial of the transcript as "frivolous" provides some icing on the cake.
NOTES
[1] The mother testified that the photographs were taken in June of 2004, shortly after one of the alleged incidents of domestic violence.
[2] At the hearing on her request for a CPO, the mother also described an incident as to which the judge did not make a finding. The mother claimed that one night in January 2004, the father woke her, demanded sex, and then verbally abused her. According to the mother, she started to scream, and the father covered her mouth with his hand and then pushed her and kicked her feet, so that she fell and banged her head against a wall. The mother stated that the boys were in the house in June and August 2004, when the acts of violence that led to the issuance of the CPO occurred.

The mother also testified that in the year 2000, she sought counseling at the House of Ruth, an organization that provides support to abused women.
[3] The mother called the police as a result of this incident. The father was arrested at the family home, and he was charged with criminal assault/domestic violence, but the case was "no-papered" by the United States Attorney's Office.
[4] The witnesses included the school principal, the older boy's soccer coach, and a family friend. The testimony of these witnesses generally supported the judge's later findings favorable to the father. Two women, one of whom was a member of the mother's home-schooling network, testified on behalf of the mother and inter alia, defended her home schooling. None of these witnesses provided any testimony regarding intrafamily offenses.
[5] See D.C.Code § 16-914(a)(2) (2001).
[6] The judge did not mention the intrafamily offenses in this regard.
[7] The judge also wrote, however, that "parental kidnapping was not a factor in the custody determination in this case."
[8] Section 16-1001(5) defines an intrafamily offense as "an act punishable and criminal offense committed by an offender upon" various categories of persons, including a person "[t]o whom the offender is related by blood, legal custody, marriage, domestic partnership, having a child in common, or with whom the offender shares or has shared a mutual residence."
[9] In a case that arose before the effective date of the 1994 Act, this court recognized that trial judges presiding over child custody cases should not close their eyes to evidence of domestic violence. In Prost v. Greene, 652 A.2d 621, 632 (D.C.1995), the trial judge had awarded custody to a father who had been accused of physically and otherwise abusing the mother. The trial judge did not, however, make findings as to whether the alleged abuse had occurred. We remanded the case to the trial court and directed the judge to give "more careful consideration" to the alleged domestic abuse and "its relevance to issues central to the decision of who should be entrusted with the primary care of the[] children." Id. We recognized in Prost that "the relevance of violence between spouses to the issues of fitness to assume custody is well-recognized," because "[e]vidence of such assaults reflects upon the character and emotional control" of the abuser. Id. at 631.
[10] Although the father denied that either incident occurred, the judge found that the father abused the mother on both occasions, thus necessarily regarding the father's sworn testimony as unworthy of belief. Cf. Prost, 652 A.2d at 633 (concurring opinion), suggesting that a parent's false denial, under oath, of his commission of acts of domestic violence suggests consciousness of guilt, and is itself therefore relevant to the custody calculus.
[11] The issue here is not, as in some cases, whether the judge erred by excluding testimony or other evidence regarding the children's preferences. On the contrary, the judge admitted the GAL's testimony on this subject. Rather, the question is whether the judge, after being presented with the boys' views, properly factored them into his custody analysis. Cf. In re A.R., 679 A.2d at 475 (contrasting "the judge's undoubted statutory duty to consider the evidence in the record relating to the child's opinion with a purported (and far more controversial) obligation to investigate the case on the judge's own initiative").
[12] We need not and do not decide whether the judge's failure to address the children's wishes, standing alone, would warrant a remand.
[13] The judge also disagreed with the GAL's assessment of certain individual statutory factors. The GAL speaks for the children whose best interests are at issue, and his findings should be accorded some weight. Nevertheless, the mother concedes that the judge was not bound by the GAL's findings or recommendation.

Although reasonable people could agree either with the GAL or with the judge as to the appropriate assessment of most of the statutory factors, we discern no reversible error in the judge's analysis. Some comment is appropriate, however, regarding the court's disposition of the seventh factor, "the capacity of the parents to communicate and reach shared decisions affecting the [children's] welfare." D.C.Code § 16-914(a)(3)(G). The GAL concluded that this factor favored neither parent. The judge disagreed, observing that the father was willing to communicate with the mother about the children, while the mother was very reluctant to deal directly with the father.
Although the evidence supports the judge's finding, it is important to recognize that this is a case in which the father committed acts of domestic violence against the mother. In such cases, the violence may trump "friendly parent" provisions which emphasize the duty of each parent to cooperate with the other parent in visitation and related arrangements, and which give preference to a parent who does so. See, e.g., Ford, 700 So.2d at 196. The court stated in Ford:
The trouble occurs when a court attempts to harmonize the non-abusive parent's conduct with "friendly parent" provisions. Here, the trial court failed to offset what it perceived to be the mother's violation of Florida's friendly-parent provisions, with what was recognized in the temporary order as the mother's "justifiable reason to fear the [h]usband." This failure resulted in an unbalanced final judgment that found "the [m]other has manipulated the visitation during this litigation to the detriment of the [f]ather," and failed to recognize the probability that the mother's actions were justified.
Id. We note, however, that the abuse in Ford was considerably more severe than that which occurred in the present case.
[14] We note that a substantial period of time has elapsed since the two boys were placed in the father's custody. So far as we are aware, the mother has not requested a reconsideration of custody based on changed circumstances during the intervening years. On remand, the parties are, of course, free to request the trial judge to consider, in the best interests of the children, any relevant events that may have occurred since the father was awarded custody. See D.C.Code § 16-914(f)(1).
[15] We have been advised that the mother's pro bono counsel have paid for the transcripts in question. Although the payment that we order shall be to the mother, we presume that counsel will be compensated by her for advancing the funds.
[16] The mother has made numerous other claims of error or abuse of discretion on the part of the trial judge. We have identified in this opinion our reasons for ordering a remand, but the opinion should not be read as having decided issues that have not been addressed in it.
[1] I also note that in this case, it is undisputed that the children expressed a preference for living with their mother and that the GAL recommended that they be permitted to do so. In addition, the judge's rejection of the GAL's recommendation was based, at least in part, on an erroneous finding.