**UNITED STATES of America,**
**Plaintiff,**

v.

**ONE PARCEL OF LAND KNOWN AS LOT 39 IN SQUARE 2535 IN THE DISTRICT OF COLUMBIA, Gelmarc Towers, Inc., a Corporation, et al., and Unknown Owners, Defendants.**

No. 3447.

United States District Court
District of Columbia.

May 26, 1955.

Robert MacLeod, Dept. of Justice, Morris Coles, General Services Administration, Washington, D. C., for plaintiff.

James C. Wilkes, Sr., David Hornstein, Norman M. Glasgow, James C. Wilkes, Jr., Washington, D. C., for defendants.

LAWS, Chief Judge.

In an earlier proceeding in this Court, the United States acquired the use and occupancy of Gelmarc Towers, an uncompleted apartment building in the District of Columbia which the owners converted into an office building for Government use. The term ran from April 1 to June 30, 1951, and pursuant to the petition for condemnation was renewed annually for three one-year periods ending on June 30, 1954.

On June 30, 1954, the United States filed this proceeding to continue its term in the property from July 1, 1954, to June 30, 1955, with the right of the United States to conclude and terminate the term at any time after September 1, 1954, at its election, upon sixty days' notice to be filed in the proceeding. The estimated just compensation as rental for this period of one year was deposited with the Court on August 10, 1954.

On August 31, 1954, the Government filed notice of election to terminate the estate effective as of September 1, 1954. It is agreed, and counsel for the owners was advised on September 2, 1954, that the Government was in fact not prepared to surrender possession on September 1, 1954, since some property had been left on the premises which the Government wished to remove. In addition, the Government wished to make at least a partial restoration of the property, which it proceeded to do. From the amount earlier deposited with the Court as estimated compensation, a distribution was ordered by the Court on October 19, 1954, for the period from July 1 to October 31, 1954.

On October 30, 1954, the Government filed another notice of termination of its estate, effective as of October 29, 1954, subject to the right of the owners to claim the reasonable cost of restoration of the premises and reasonable rent during the period of restoration. By this notice the United States stated it tendered the keys to the premises to the owners. By telephone conversation on October 28 and 29, counsel for the owners had been informed such notice was being prepared. He advised Government counsel he could not take possession, since maintenance personnel were not immediately available to prevent pipes from freezing and other damage resulting to the building, and there was some question of the extent to which the United States was required to and would make restoration of the property, under a stipulation entered on June 25, 1951, before surrendering possession. Government counsel indicated the matter would have to be taken up with his superiors. There never came a time when the owners were given specific notice that the Government had

completed all the restoration work which it elected to do.

On December 10, 1954, the Government filed a motion for an order of the Court that custody of the property be turned over to the owners and the Government be released from responsibility for custody. An answer in opposition was filed by the owners. The parties were unable to agree on a transfer of possession. The owners sought to impose conditions that any taking by them must be without prejudice to their right to claim rental during the time the Government was in possession and that a condemnation jury should view the premises before the owners began restoration. Until March 24, 1955, the Government would not agree to these conditions. After a condemnation jury had been selected and had a view of the property, by stipulation possession was turned over to the owners by the Government effective on March 28, 1955.

At pre-trial hearing it was stipulated that the Court would decide all issues of fact as well as law incident to the validity of the notices to surrender the premises and questions relating to the termination of the estate and surrender of possession.

■■■■■ Determination of issues in a condemnation case rests upon broad principles of equity which go beyond technical requirements of local landlord and tenant law. The right of the United States Government to take private property under its power of eminent domain is subject to the requirement of the Fifth Amendment to the Constitution that private property shall not be taken for public use without just compensation. On the one hand, it contemplates that the monies paid into the common Treasury by the taxpayers shall be jealousy guarded as a public trust against unfounded and unjust claims. On the other, it guarantees that the Government, having regard for the rights and welfare of its citizens and respect for the restraints on its authority, shall deal fairly and equitably with each of them.

In this case, the Government in its complaint assumed an obligation to give sixty days' notice to be filed in this proceeding before terminating its estate. This was not an unreasonable condition. The property involved is a large new luxury apartment building. It was not completed when the Government went into possession in 1951. It would appear obvious, before the owners on repossession could complete the building and prepare for occupancy, it would be necessary to gather materials on the site and have available a construction, custodial and managerial force to proceed with the work. Sixty days was the length of time which the Government itself apparently considered reasonable for such preparation, and the owners were led to rely upon such notice being given. The Government continued in possession of the property after July 1, 1954, under these conditions.

■■ The Government maintains this case is not a condemnation under a declaration of taking procedure, so that it was free to abandon the proceeding at any time. Where no declaration of taking has been filed, no judgment entered and no payment or deposit made of an award of just compensation, title has not vested in the United States, and it is free to abandon the taking or reduce the estate at any time, even if it has taken possession, and be liable only for actual use and occupancy with restoration damage. Danforth v. United States, 1939, 308 U.S. 271, 60 S.Ct. 231, 84 L.Ed. 240; Moody v. Wickard, 1943, 78 U.S.App. D.C. 80, 136 F.2d 801, certiorari denied, 320 U.S. 775, 64 S.Ct. 89, 88 L.Ed. 465; Johnson & Wimsatt v. Reichelderfer, 1933, 62 App.D.C. 237, 66 F.2d 217; O'-Connor v. United States, 9 Cir., 1946, 155 F.2d 425; Barnidge v. United States, 8 Cir., 1939, 101 F.2d 295; Kanakanui v. United States, 9 Cir., 1917, 244 F. 923; United States v. 4.105 Acres of Land in Pleasanton, D.C.Cal.1946, 68 F.Supp. 279. In this type of proceeding, the Government has opportunity of determining the price of a property so that it may decide whether it exceeds the ex-

pected benefit or is more than it is prepared to pay, and the owner may have an opportunity to test the validity of the taking. The Government can then decide whether to accept or refuse at the price fixed.

The Court is of opinion these cases are not applicable to the present case. Other than the fact the initial pleading in this case was denominated a complaint rather than a declaration of taking, the proceeding in all respects partook of the nature of a declaration of taking. The statutory authority cited, the same as that cited in the earlier case vesting title in the United States, included that of former 40 U.S.C.A. §§ 361–386, recodified as D.C.Code 1951, §§ 16–619 to 16–644, which contemplates a declaration of taking procedure in § 16–628. In accordance with that section, there is a statement of statutory authority, an identification of the property, a statement of the estate taken, a technical description of the property, and a statement of estimated just compensation. The sum estimated as just compensation for the entire yearly period was deposited in the registry of the Court. Without objection, the Government permitted an award by the Court to the owners for the first four months of tenancy in an order which described the estate as having been acquired. In the two notices of termination and surrender, the United States recognized and denominated its interest as an estate.

■ The considerations governing the procedure in the cases cited are also not applicable here. Title had vested in the earlier proceeding by which the United States was in possession of the property for more than three years when this action was filed. Judgment had been entered in such proceeding which served as a fair indication of the amount of rental that might be expected to be awarded as just compensation. The United States itself had defined the terms whereby it could terminate the estate, thereby protecting itself against having to take an estate beyond the term it might be of benefit to the Government, by providing for termination at any time after September 1, 1954, two months after the estate began, upon sixty days' notice. The Court is of opinion the United States could not abandon the estate except pursuant to the terms of the taking. United States v. Hayes, 9 Cir., 1949, 172 F.2d 677; United States v. Sunset Cemetery Co., 7 Cir., 1942, 132 F.2d 163; United States v. Certain Parcels of Land in City of Baltimore, Md., D.C.Md.1945, 61 F.Supp. 164.

In addition to this, it appears the Government never chose to surrender possession by motion to dismiss filed in this case, as would be required. It proceeded at all times, including when posting the two notices, as if it were relying upon the complaint filed in this action, which in effect led the owners to rely on its terms.

The owners were entitled to be apprised with a reasonable degree of certainty of the intentions of the condemnor before they could be expected to know what preparations to make, as well as when, to take over the property. Many changes had been made in preparing the property for Government use in 1951. Extensive changes would have to be made, either by the owners or by the Government, in restoring the building. The Government at its election could make full, partial, or no restoration, being liable for the reasonable cost of whatever restoration had not been completed, less reasonable and ordinary wear and tear from normal use, and reasonable rental for the period while restoration was completed. Spreckels v. United States, 1927, 63 Ct.Cl. 64; United States v. 37.15 Acres of Land, More or Less, in Mariposa County, Cal., D.C.Cal.1948, 77 F.Supp. 798; United States v. 14.-4756 Acres of Land in Christiana Hundred, New Castle County, D.C.Del.1947, 71 F.Supp. 1005. The owners could not hold the Government liable for rental upon their refusal to take the premises because it was not completely restored, Riverside Military Academy v. United States, 1952, 122 Ct.Cl. 756, or for the

period while negotiations were in progress, Spreckels v. United States, supra, or for any failure to remove its property after the premises were vacated, Colton v. United States, 1930, 71 Ct.Cl. 138, or for any failure to give formal notice when the parties knew what was required and acted on that basis, Smith v. United States, 1942, 96 Ct.Cl. 326. The owners did, however, have a right to be fairly informed of what election the Government had made so that they might know what materials and work force were necessary. So long as the Government had not resolved, and revealed to the owners, what restoration it would make, the owners could not reasonably know what was expected of them.

The Government maintains there is no liability for rental beyond October 31, 1954, because it acted at all times as would a reasonable man in attempting to prevent costs to the Government beyond that absolutely necessary by terminating the estate forthwith in accordance with the request of the Administrator of the General Services Administration, dated August 28, 1954, that the pending proceedings be terminated "at the earliest possible date subsequent to September 1." This phrase may not be interpreted as necessarily meaning immediately, but must be construed as requesting termination as soon as possible according to the best interests of the Government. The order would necessarily involve considerations of removal of Government property from the premises, the extent to which restoration should be made by the Government, possibilities of compromise, and similar factors. Until responsible Government agencies had decided upon a course of action in the light of these considerations, the earliest possible date cannot be said to have been determined. This is therefore not a case sounding in tort for any alleged negligence, mistake, inadvertence, or unauthorized action of a Government representative, cf. Johnson v. United States, 1866, 2 Ct.Cl. 391.

The Government argues that its notice of August 31, 1954, was a sixty days' notice of termination of its estate, so that the owners were obligated to take possession sixty days thereafter, that is October 31, 1954; that the second notice filed October 30, 1954, confirmed the first notice. The notice of August 31, however, was a notice that the estate was terminated effective September 1, 1954. It sought to terminate the estate on the day after the notice was filed and the day before the estate could terminate under the terms of the taking. Under the complaint, the Government was required to give the sixty days' notice before termination of the estate; under a fair reading of the proviso, the sixty days could not possibly begin running after the estate was terminated. There was furthermore in effect a withdrawal of the notice in that the owners were advised by Government counsel on September 2, 1954, that the Government was in fact not prepared to surrender possession before removing certain equipment from the premises. The Government argues this affected the provisions as to possession, but not as to termination. Both provisions are, however, in the same language and indicate an intention that termination and transfer of possession were to take place the same day.

The notice of October 30, 1954, was another attempt to terminate the estate immediately, and was to be effective on October 29, the day before the notice was filed. Since the complaint provided for termination by notice filed in the proceeding, the date of filing, that is October 30, 1954, and not October 29 would be controlling. The notice filed October 30, 1954, could not have been intended to be based upon the notice of August 31 as a termination upon a sixty days' notice, because the notice of August 31 was not referred to and both notices are couched in the same language based upon the complaint in the case. If the notice of August 31 had been a sixty days' notice, the period of sixty days had not expired on October 29. The Government states it was so dated because October 30 and 31 were a Saturday and

Sunday, respectively, when its offices were closed, but this does not explain why the notice could not be stated as effective on October 31 or why the fact was not stated in the notice as to avoid natural confusion on the face of the notice. There was also confusion as to the extent of the proposed restoration of the premises and as to tender of keys. Having led the owners to believe, by the stipulation entered on June 25, 1951, that complete restoration would be made before surrender of possession, the Government indicated for the first time uncertainty as to the extent of its proposed restoration. Government counsel indicated to the owners' counsel he would take the matter up with his superiors. While there was evidence no restoration was made after October 26, this fact was not communicated to the owners. There was a statement in the notice of October 30th that the keys were thereby tendered, but no keys were attached to the notice, served upon the owners or their representative, or even offered by telephone by Government counsel at any time when they were in his possession. The Court finds that as to both the notice of August 31 and that of October 30, there was such uncertainty on the part of the Government representatives as to their plans, with regard to surrendering the premises, it would be unjust to hold either of such notices was effective. Under the circumstances, the Court finds such notices were without legal effect.

■ With its motion of December 10, 1954, requesting that the Court order the custody of the property be turned over to the owners, there did come a time when the Government filed in this proceeding a clear and unequivocal notice of intention to terminate the estate and surrender possession. The Court is of opinion it was a necessary inference from the filing of the motion that the Government had done all the restoration it intended to do. No conversations between representatives of the parties indicated anything to the contrary. While it was not stated the motion was a sixty days' notice, the Court is of opinion the owners had placed upon them an affirmative duty to prepare to take the property over within sixty days. The action of another judge of the Court overruling the motion as raising questions of fact to be determined by the jury did not affect the certainty of the Government's intention to surrender possession.

■ The owners insist they were at all times willing to accept surrender of the estate upon conditions that their right to rental during Government possession be preserved and a jury view the premises before restoration. The right of the owners to rental for the period the Government was in possession could have been preserved by answer filed to the motion. Indeed such right existed as a matter of law. Their right to reasonable rental for the period of restoration, and to an award for costs in completing restoration, has never been questioned. There was opportunity to apply formally to the Court for the selection of a condemnation jury as to have permitted a jury view before the sixty days following the Government's motion of December 10, 1954, had expired; there also was opportunity to demand surrender of the keys if required. Once a definite intention to surrender was made clear to the owners, negotiations to settle would not suspend the effective date of the surrender. The Court feels constrained to conclude the Government terminated its estate and its liability for rental expired sixty days after December 10, 1955.

When these hearings began, the Government made objection to the introduction of any testimony upon the ground that the matter for decision by the Court was one of law upon the record. Testimony was permitted by the Court, subject to reconsideration. The Court has disregarded all testimony, some of which related to inadmissible evidence as to discussions of settlement, except testimony as to facts discussed in this opinion.

On the basis of the record and the limited evidence considered, the Court finds the Government's estate ran until sixty

days after the motion of December 10, 1954, was filed, for an order directing custody of the property be turned over to the owner. Rent will be awarded to the owners, upon the rate entered by stipulation, to that date. Counsel will prepare appropriate findings of fact and conclusions of law in conformity with this opinion.