DUK HEA OH, Appellant,

v.

NATIONAL CAPITAL
REVITALIZATION CORPORATION,
Appellee.

Nos. 09–CV–1267, 10–CV–144.

District of Columbia Court of Appeals.

Argued Sept. 27, 2010.
Decided Nov. 12, 2010.

Elaine Mittleman, for appellant.

Carl J. Schifferle, Assistant Attorney General, with whom Peter J. Nickles, Attorney General for the District of Columbia, Todd S. Kim, Solicitor General, and

Donna M. Murasky, Deputy Solicitor General, were on the brief for appellee.

Before GLICKMAN and THOMPSON, Associate Judges, and SCHWELB, Senior Judge.

THOMPSON, Associate Judge:

In 2005, the Council of the District of Columbia authorized the National Capital Revitalization Corporation ("NCRC") to exercise the power of eminent domain to acquire property at the Skyland Shopping Center ("Skyland"), located on Alabama Avenue, S.E. On July 8, 2005, NCRC filed a complaint to condemn a property at Skyland owned by appellant Duk Hea Oh ("the Property"), which action resulted in a jury trial to determine just compensation. The jury appraised the Property at $160,000 and the trial court confirmed the jury's determination. In this appeal, Ms. Oh contends that the trial court erred in (1) striking her affirmative defense that the taking was pretextual; (2) determining that the date of the taking was November 18, 2005, and ordering her to vacate the Property; (3) excluding evidence of comparable sales and settlements; (4) confirming the jury's appraisement of the Property; (5) ordering Ms. Oh to pay rent to the District in the amount of $1,590 per month commencing on November 18, 2005; and (6) failing to give effect to a (purported) settlement agreement between Ms. Oh and NCRC. We affirm the judgment of the trial court.

## I. Background

The Property consists of a building on 0.03 acres located at 2842 Alabama Avenue, S.E., from which Ms. Oh operated a business called Beauty World. Ms. Oh and her late husband purchased the property in 1990.[1]

In 1998, the Council of the District of Columbia ("Council") created NCRC as an independent instrumentality of the District of Columbia. D.C.Code § 2–1219.02 (2001) (repealed 2007). Among its "public purposes," NCRC was charged with "induc[ing] economic development and job creation by developing and updating a strategic economic development plan ... [and by] removing slum and blight...." *Id.* In order to further these public purposes, NCRC had the power to condemn property by eminent domain, provided that the Council authorized NCRC's exercise of eminent domain prior to the time the agency instituted condemnation proceedings. *Id.* § 2–1219.19(a)–(b) (empowering NCRC to exercise eminent domain); *Id.* § 16–1311 (empowering the District of Columbia (the "District") to exercise eminent domain).

### A. The Skyland Project

In 2004, the Council proposed legislation to allow NCRC to exercise eminent domain to acquire 18.5 acres of property at and around Skyland in order to "engage in comprehensive redevelopment of the site." D.C. Council, National Capital Revitalization Corporation Eminent Domain Clarification and Skyland Eminent Domain Approval Amendment Act of 2004 [hereinafter "Skyland Act"], Bill 15–752 (March 2, 2004). After the bill's introduction, on April 28, 2004, the Council's Committee on Economic Development held a public hearing, during which there was extensive oral and written testimony both in favor of and in opposition to the legislation. *See* D.C. Council, Report on Bill 15–752 (Nov. 3, 2004).

Subsequent to the public hearing, the Council added to the bill a number of

---

1. Mr. Oh was a party to this lawsuit when it was filed in 2005. On March 9, 2006, after his death, Ms. Oh became the primary defendant.

findings supporting the exercise of eminent domain: the Council found, *inter alia*, that the area "is a blighting factor"; that it "is characterized by underused, neglected, and poorly maintained properties"; and that "construction of a new shopping center on the site ... will further many important public purposes." Skyland Act, Bill 15–752, at 6 (Nov. 3, 2004). The Council found those public purposes to include the removal of unsanitary conditions, the reduction of crime, the provision of job opportunities and retail options for residents, and the revitalization of an economically distressed community. *Id.*

The Council passed the bill on December 7, 2004, the Mayor signed it on December 29, 2004, and it became law on April 5, 2005 after the congressional review period ended. Skyland Act, D.C. Law 15–286; 52 D.C.Reg. 4567 (2005). NCRC proceeded to acquire most of the properties at Skyland through private negotiations and other condemnation actions. *See, e.g., Rumber v. District of Columbia and NCRC,* 487 F.3d 941 (D.C.Cir.2007); *Franco v. National Capital Revitalization Comm'n (Franco I),* 930 A.2d 160 (D.C.2007); *Franco v. District of Columbia,* 3 A.3d 300 (D.C.2010).

### B. This Litigation

On July 8, 2005, NCRC filed a "Complaint to Condemn Real Property" with respect to Ms. Oh's property and an attached "Declaration in Support of Complaint to Condemn Real Property." Subsequently, on November 18, 2005, NCRC deposited $160,000 into the court's registry, an amount it described as "representing funds estimated to be just compensation for the Property delineated in the Declaration of Taking filed in this action on July 8, 2005."

After the trial court dismissed Ms. Oh's motion to dismiss the complaint, Ms. Oh filed her answer on November 1, 2005, asserting several affirmative defenses, including that the proposed taking violated the Fifth Amendment because the declared reason for it was "pretextual," in that the taking was actually "for a private purpose and not for a public use or public purpose." NCRC moved to strike Ms. Oh's affirmative defenses pursuant to Superior Court Civil Rule 12(f) and for immediate possession of the Property. In orders signed on March 8, 2006, the trial court declared that legal title to the Property vested in NCRC as of November 18, 2005, and granted both motions.

In October 2007, the District was substituted for NCRC as plaintiff (NCRC having been dissolved by the Council, which transferred NCRC's authority to the Mayor). D.C.Code § 2–1225.01 (2008). After the court had ruled on a variety of pre-trial motions, the matter proceeded to a jury trial in October 2009 on the issue of compensation. The jury determined that the fair market value of Ms. Oh's property at the time of the taking on November 18, 2005, was $160,000, and, on January 15, 2010, the trial court confirmed the jury's appraisement. The trial court also granted the District's renewed motion for possession, directing Ms. Oh to vacate the property by September 1, 2010, and ordering that the amount of back rent that Ms. Oh owed to the District be immediately disbursed to the District from the funds in the court's registry.[2] Ms. Oh then appealed, and we consolidated her appeal from the trial court's final order with an appeal she had filed from an earlier interlocutory order.

## II. Analysis

### A. Striking of Affirmative Defenses

Ms. Oh's answer raised twelve affirmative defenses in response to NCRC's con-

---

2. The court determined that as of November 18, 2009, Ms. Oh owed the District $79,500.

demnation complaint. She asserts on appeal that the trial court erred in striking each of her affirmative defenses, but her brief specifically mentions only two of the defenses: that "the taking of the property was for a private use and not for a public use or public purpose" and that "the taking was speculative, pretextual and/or unnecessary." [3] The court struck the first of these defenses on the ground that Ms. Oh's answer "present[ed] no facts or circumstances from which the Court can conclude that the actions of the City Council and NCRC are anything but an exercise of their lawful authority." The court found it "unclear" what Ms. Oh meant in asserting that the taking of the property was "speculative, pretextual and/or unnecessary," but struck this second defense on the grounds that the Council's determination that the condemnation was necessary to abate blight in the area and to bring about economic development "undermin[ed] any notion that NCRC's actions are unnecessary," and that Ms. Oh had "not presented[,] and there is nothing in the record to suggest[,] that the taking of the property is either speculative or pretextual." [4]

The Fifth Amendment to the United States Constitution allows the government to take private property for a public use or purpose as long as it pays just compensation.[5] United States Const. amend. V; *Kelo v. City of New London, Connecticut,* 545 U.S. 469, 479, 125 S.Ct. 2655, 162 L.Ed.2d 439 (2005). In *Kelo,* the United States Supreme Court explicitly held that "promoting economic development is a traditional and long accepted function of government," which qualifies as a "public purpose" indistinguishable from other public purposes. *Kelo,* 545 U.S. at 484, 125 S.Ct. 2655. The *Kelo* Court recognized, however, that a government may not take property "under the mere pretext of a public purpose, when its actual purpose [is] to bestow a private benefit." *Id.* at 478, 125 S.Ct. 2655. And, while there is a "longstanding policy of deference to legislative judgments in this field," *id.* at 480, 125 S.Ct. 2655, this court has noted that

> there may be situations where a court should not take at face value what the legislature has said. The government will rarely acknowledge that it is acting for a forbidden reason, so a property owner must in some circumstances be allowed to allege and to demonstrate that the stated public purpose for the condemnation is pretextual.

*Franco I,* 930 A.2d at 169.

This court's jurisprudence instructs that "a motion to strike a defense as insufficient will be denied 'if [the defense] fairly presents a question of law or fact which the court ought to hear.'" *Franco I,* 930 A.2d at 166 (quoting *Securi-*

---

3. The full text of these defenses as stated in Ms. Oh's answer are as follows. Fourth Defense: "The Complaint is barred by the Takings Clause of the Fifth Amendment of the United States Constitution in that it would authorize the taking of the Property for a private use and not for a public use or public purpose." Sixth Defense: "The Complaint is barred because the taking of the Property is speculative, pretextual and/or unnecessary." Hereafter, we refer to these two defenses collectively as Ms. Oh's "pretext defenses."

4. We review *de novo* the court's decision to strike Ms. Oh's pretext defense. *Franco I,* 930 A.2d at 166. We deem that Ms. Oh has waived her challenge to the striking of her other affirmative defenses. *See Drake v. McNair,* 993 A.2d 607 (D.C.2010) (deeming an issue waived where party failed to include in her brief any substantive argument related to the issue).

5. As we have recognized, the District has "the duty not to violate ... rights under the takings clause of the Fifth Amendment." *District of Columbia v. Carr,* 607 A.2d 513, 518 (D.C.1992).

*ties & Exchange Comm'n v. Gulf & Western Indus., Inc.,* 502 F.Supp. 343, 345 (D.D.C.1980)). Thus, a court should not grant a motion to strike "if the insufficiency of the defense is not clearly apparent, or if it raises factual issues that should be determined on a hearing on the merits." *Franco I*, 930 A.2d at 166–67 (quoting 5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: Civil 3D § 1381, at 427–28 (2004)). Our case law makes clear, however, that for an affirmative defense to stand (in the sense of entitling the defendant to proceed with discovery as to the defense), facts establishing the elements of the defense "must be particularized in some detail." *Patterson v. Walker–Thomas Furniture Co.,* 277 A.2d 111, 114 (D.C.1971). Unless facts supporting an affirmative defense are particularized in an answer or are detailed on the face of the complaint, an affirmative defense expressed only as a legal conclusion is insufficient. *Patterson,* 277 A.2d at 114; *Whitener v. Washington Metro. Area Transit Auth.,* 505 A.2d 457, 460 (D.C. 1986) (citing authority that a conclusory statute-of-limitations defense may stand where the defense is "apparent from the face of the complaint"); *see also Shechter v. Comptroller of City of New York,* 79 F.3d 265, 270 (2d Cir.1996) ("[a]ffirmative defenses which amount to nothing more than mere conclusions of law and are not warranted by any asserted facts have no

efficacy.") (citation and internal quotation marks omitted); *Barnidge v. United States,* 101 F.2d 295, 297 (8th Cir.1939) ("Admitting the facts pleaded [in answer], but not [condemnee's] conclusions of law[.]").[6]

Applying these standards, we can find no error in the trial court's decision to strike Ms. Oh's pretext defenses. Neither Ms. Oh's answer nor the face of the complaint alleges a single fact that supports her assertion that the taking is for a private use under the pretext of a public purpose.[7] The only statement found in Ms. Oh's answer that arguably could bolster her pretext defense is her statement that "[d]efendant denies that blighted, hazardous, and distressed conditions currently exist at the Skyland Site," but this statement fails to allege facts that could be described as "specific" or "detailed." Moreover, the statement does not take into account that eminent domain may be exercised for the public purpose of creating jobs and "developing [an] area to create conditions that would *prevent ... blight in the future." Kelo,* 545 U.S. at 474, 485 n. 13, 125 S.Ct. 2655 (emphasis added) (citing *Berman v. Parker,* 348 U.S. 26, 34–35, 75 S.Ct. 98, 99 L.Ed. 27 (1954)). The Council's stated purpose in authorizing the taking of Skyland properties was not only to eliminate blight, hazards, and

6. *Cf. Flocco v. State Farm Mut. Auto. Ins. Co.,* 752 A.2d 147, 160 (D.C.2000) ("[F]or the purpose of a motion to dismiss, ... unsupported conclusions of the pleader may be disregarded.") (quoting *Oppenheim v. Sterling,* 368 F.2d 516, 519 (10th Cir.1966) (internal quotation marks omitted)); *FSP, Inc. v. Societe Generale,* 2005 WL 475986, at *8, 2005 U.S. Dist. LEXIS 3081, at *26 (S.D.N.Y.2005) (reasoning that "[a] motion to strike an affirmative defense, pursuant to [Rule] 12(f), is ... governed by the same standard applicable to a motion to dismiss pursuant to [Rule] 12(b)(6)").

7. Ms. Oh argues that, in the face of other litigation involving the Skyland Project, "the District cannot claim that it is unaware of the facts or issues concerning the public use question." As the Supreme Court has instructed, however, the facts underlying an affirmative defense "must be taken to be those set up in the ... answer." *Kelly v. Kosuga,* 358 U.S. 516, 516, 79 S.Ct. 429, 3 L.Ed.2d 475 (1959); *see also Franco I,* 930 A.2d at 169. Thus, Ms. Oh was required to plead the facts she wished the trial court to consider.

distressed conditions, but also to promote "the provision of job opportunities and retail options for residents." Skyland Act, Bill 15–752 at 6, (Nov. 3, 2004). Because, standing alone, the allegation in Ms. Oh's answer about the absence of "blighted, hazardous, and distressed conditions" at Skyland did not constitute a legally sufficient defense,[8] the court was permitted to strike the affirmative defense of "pretext" that the allegation purported to support. *See* Super. Ct. Civ. R. 12(f) (authorizing the trial court to strike "any insufficient defense").

Our ruling in *Franco I* does not require a different result. As recounted in that opinion, in July 2005, NCRC filed a complaint to condemn a Skyland property owned by Samuel Franco. *Franco I*, 930 A.2d at 164. In his answer, Mr. Franco raised seven affirmative defenses, including a pretext defense that alleged that the Skyland Act

> would authorize the taking of said property for a private use and not for a public use or purpose by, among other things, having as its purpose conferring a private benefit on a particular private party, stating pretextually a public purpose but having as its actual purpose bestowing a private benefit[.]

*Id.* at 169. The wording of Mr. Franco's affirmative defense is quite similar to the wording of Ms. Oh's pretext defenses. *See supra.* However, unlike Ms. Oh's answer, Mr. Franco's answer included six detailed counterclaims in addition to his affirmative defenses. *Franco I*, 930 A.2d at 162, 170.

The trial court in *Franco I* granted NCRC's motions to strike all of Mr. Franco's defenses and counterclaims, concluding. that they were "legally insufficient." *Id.* at 164. This court found on appeal, however, that Mr. Franco's first counterclaim contained "many specific factual allegations to support this [pretext] claim."[9] *Id.* at 170. In light of these "detailed allegations," we concluded that Mr. Franco had sufficiently pled his pretext defense, and we therefore reversed the trial court's decision and remanded for further proceedings. *Id.* at 162.

Ms. Oh urges us to adopt the *Franco I* panel's resolution and to reverse the trial court's order granting the motion to strike her pretext defense. However, since Ms. Oh's answer does not contain detailed counterclaims comparable to those in Mr. Franco's complaint or other "detailed allegations" of the type on which the *Franco I* panel based its determination, we cannot rely on the outcome of *Franco I* to conclude that Ms. Oh's pretext defense should have been allowed to stand. To the contrary, our holding here appropriately echoes what we observed in *Franco I* about Mr. Franco's affirmative defenses standing alone: "These allegations [of pretext] may be too conclusory by themselves to survive a motion to strike." *Franco I*, 930 A.2d at 170.

In sum, given Ms. Oh's conclusory pretext defense, unsupported by factual detail in her answer or the complaint, we con-

8. Likewise, Ms. Oh's bare assertion that the taking was "speculative" and "unnecessary" was legally insufficient in light of the deference we must accord to "legislative judgments in this field." *Kelo*, 545 U.S. at 480, 125 S.Ct. 2655; *see also United States v. 416.81 Acres of Land*, 514 F.2d 627, 631 (7th Cir.1975) ("It is not for the courts to review the necessity of the taking").

9. For example, Mr. Franco alleged that, two years before the Skyland Act was introduced, NCRC entered into a contract with a private developer under which NCRC was to share in the profits of redevelopment, and that the NCRC planned to sell the site to the private developer for less than its value. *Franco I*, 930 A.2d at 171.

clude that the trial court did not err in striking the defense.[10]

## B. Motion for Immediate Possession and Order to Vacate

The trial court determined that title to the Property passed to NCRC on November 18, 2005, and ruled that NCRC (and, later, the District as substituted plaintiff) was entitled to possession as of that date. Ms. Oh contends that NCRC did not fully comply with the statutory procedures for executing a so-called "quick-take" condemnation, and that as a result, title to the Property did not pass from her to NCRC on November 18, 2005.

D.C.Code § 16–1314 prescribes the steps that the District must follow to effectuate a "quick-take" condemnation (so called because it allows the District to obtain title to private property quickly without waiting for the result of a jury trial [11]). First, the District must file a

---

**10.** We reach this conclusion without accepting the District's invitation that we apply to Ms. Oh's pretext defense the federal pleadings standard recently established by the U.S. Supreme Court. Until 2007, the federal standard for pleadings was the one set out in *Conley v. Gibson*, 355 U.S. 41, 45, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) ("[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that a plaintiff can prove no set of facts in support of his claim which would entitle him to relief"). The Supreme Court has rejected the *Conley* standard in favor of a higher pleading threshold. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *Ashcroft v. Iqbal*, ── U.S. ──, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). In *Twombly*, an antitrust case, the Supreme Court "retired" the "no set of facts" language in favor of a new "plausibility" standard. *Twombly*, 550 U.S. at 553, 127 S.Ct. 1955. In *Iqbal*, the Court confirmed that *Twombly* "governs the pleading standard for all civil actions ... and proceedings in the United States district courts." *Iqbal*, 129 S.Ct. at 1953 (citation and internal quotation marks omitted). *Iqbal* held that in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,' " explaining that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949.

Although the *Iqbal* Court did not explicitly discuss affirmative defense pleadings, many U.S. District Courts have applied this higher standard to all pleadings, whether complaints or affirmative defenses. *See, e.g., Castillo v. Roche Laboratories*, 2010 WL 3027726, at *2,

2010 U.S. Dist. LEXIS 87681, at *4–*5 (S.D.Fla. July 30, 2010) (collecting cases and observing that "[w]hile no Circuit Courts of Appeals have addressed whether this heightened pleading standard applies to affirmative defenses, a majority of lower courts have found that it does"). Other courts have explicitly declined to apply the *Twombly/Iqbal* standard to affirmative defenses. *See id.* at *2–*3, 2010 U.S. LEXIS 87681 at *6–*7 (collecting cases). This court has not definitively decided whether to adopt that standard for complaints, much less whether to apply the standard to affirmative defenses. We need not consider the issue at this time because, as explained above, Ms. Oh's pretext defense fails even under the (arguably less rigorous) pleading standard set forth in our established case law. Thus, we need not address Ms. Oh's argument that the *Twombly/Iqbal* standard should not apply to affirmative defenses raised in her 2005 answer. *But cf. Goldstein v. Pataki*, 488 F.Supp.2d 254, 289 (E.D.N.Y. 2007) (reasoning that "because Justice Kennedy, the fifth vote in the *Kelo* majority, would require a plaintiff challenging a taking to assert 'a *plausible* accusation of impermissible favoritism to private parties,' *Kelo* at 491, 125 S.Ct. 2655 (Kennedy, J., concurring) ..., the plausibility standard recognized in *Twombly* arguably applied to eminent-domain cases even before *Twombly* was decided").

**11.** *Compare* D.C.Code § 16–1314 (providing that upon filing of a declaration of taking and deposit into the court registry of estimated just compensation, title to the condemned property "shall vest in the District of Columbia") *with* D.C.Code § 16–1319 (providing that after a jury appraisement confirmed by the court and deposit of the amount fixed by the jury, "title to the property condemned

complaint for condemnation in trial court. D.C.Code § 16–1314(a) (2001) (referencing the complaint described in D.C.Code § 16–1311); *see also* Super. Ct. Civ. R. 71A (c) (2001). Second, it must file a "declaration of taking," either "with the complaint or at any time before judgment," D.C.Code § 16–1314(a). Third, the District must deposit the estimated just compensation into the court's registry. *Id.* § 16–1314(b) (2001). "Upon the filing of the declaration of taking and the deposit in the registry of the court," the "title to the property . . . shall vest in the District of Columbia, and the property shall be deemed to be condemned and taken for the use of the District, and the right to just compensation therefor shall vest in the persons entitled thereto." *Id.* Once title has vested in the District, the court "may fix the time within which and the terms upon which the parties in possession shall be required to surrender possession" of the property to the District. *Id.* § 16–1316 (2001).

 Ms. Oh argues that NCRC failed to accomplish a quick-take condemnation that was effective to give it title to the Property as of November 18, 2005, because (1) NCRC failed to file a document that qualified as a declaration of taking; (2) NCRC's deposit of estimated just compensation occurred too late to effectuate a quick-take condemnation; and (3) no transfer of title was recorded on that date. We disagree.[12]

D.C.Code § 16–1314(a) describes the mandatory contents of a declaration of taking: (1) a statement of authority under which, and the public use for which, the property is taken; (2) a description of the property; (3) a statement of the interest in the property taken; (4) a plan showing the property taken; and (5) a statement of the sum of money estimated to be just compensation. D.C.Code § 16–1314(a)(1)–(5). The "Declaration in Support of Complaint to Condemn Real Property" that NCRC filed on July 8, 2005, asserted NCRC's statutory authority for taking the Property (D.C.Code §§ 2–1219.19(a) and 2–1219.19(c)(1)); the public use for which it was taken ("to consolidate the Property with the other parcels for retail and related development," to wit, the development plan known as the "Skyland Project"); a description of the Property by reference to the assessment and tax records and a parcel number; a statement that NCRC sought to acquire the Property "in fee simple"; a plat showing the Property; and NCRC's estimate that $160,000 would constitute just compensation for the Property.

Ms. Oh does not contend on appeal that the foregoing content failed to satisfy the statutory requirements for the content of a declaration of taking, but complains that neither NCRC's July 8, 2005 filing nor anything else that NCRC filed qualified as a declaration of taking because no filing was so captioned, and because nothing in NCRC's filings tracked the statutory language by stating that "the property is thereby taken for use of the District of Columbia." D.C.Code § 16–1314(a). She also argues that NCRC's failure to deposit

---

shall vest in the District of Columbia"). As under a similar federal condemnation statute, the practical effect of the non-expedited procedure described in section 16–1319 is "to give the Government an option to buy the property at the adjudicated price. . . . If the Government wishes to exercise that option, it tenders payment to the private owner, whereupon title and right to possession vest in the United States. If the Government decides not

to exercise its option, it can move for dismissal of the condemnation action." *Kirby Forest Indus. v. United States,* 467 U.S. 1, 4, 104 S.Ct. 2187, 81 L.Ed.2d 1 (1984) (citations omitted).

12. Our review is *de novo* since we must construe the statutory language of section 16–1314(a). *See Veney v. United States,* 929 A.2d 448, 459 (D.C.2007).

the just-compensation funds into the court registry contemporaneously with its July 8, 2005 filing negated any effort by NCRC to effect a quick-take condemnation. We are not persuaded by these arguments. For the reasons that follow, we conclude instead that the July 8 declaration either (1) was a declaration of taking, which NCRC need not have withdrawn and then re-filed when it made its deposit of estimated just compensation into the court registry; or (2) was not a complete declaration of taking but effectively became one when combined with the November 18, 2005 notice that NCRC filed contemporaneously with making its deposit into the court registry.

We begin our analysis by noting that section 16–1314 does not require that a declaration of taking have any particular caption.[13] Nor does the statute require any specific, magic words.[14] And, despite absence of the language that Ms. Oh asserts was required ("the property is [ ]hereby taken for use of the District of Columbia"), Ms. Oh recognized in her November 1, 2005 answer that NCRC's July 8, 2005 filing purported to declare a taking: one of Ms. Oh's affirmative defenses stated that NCRC's complaint was barred because NCRC "filed a Declaration of Taking that did not include a 'plan showing the property taken[.]'" We think it was obvious that NCRC's intention, "gathered from the language of the entire declaration and the circumstances surrounding it,"[15] was to take the Property. Indeed, had NCRC not intended to pursue the quick-take procedure, there would have been no reason for it to file anything other than the complaint contemplated by D.C.Code § 16–1311, and it could have dispensed with the accompanying "Declaration in Support of Complaint to Condemn Real Property" that set out the information prescribed by section 16–1314(a)(1)–(5). And in any event, with the notice that NCRC filed on November 18, 2005, when it paid the estimate of just compensation into the court registry—a notice stating that the amount paid into the registry was "for the Property delineated in the Declaration of Taking filed in this action on July 8, 2005"—NCRC effectively remedied any omission in its earlier declaration and unambiguously demonstrated its intent to effect a quick-take condemnation.

We now turn to Ms. Oh's argument that NCRC had to file a complete declaration of taking contemporaneously with its deposit of just-compensation funds into the court registry in order to accomplish a quick-take condemnation. D.C.Code § 16–1314(a) states explicitly that the declaration of taking need not be filed contemporaneously with the condemnation complaint (expressly providing that the

---

**13.** *Cf. United States v. One Parcel of Land,* 131 F.Supp. 443, 445–46 (D.D.C.1955) (applying analogous federal condemnation statute and rejecting government's argument that the government "was free to abandon the proceeding at any time," reasoning that the government had filed "a statement of statutory authority, an identification of the property, a statement of the estate taken, a technical description of the property, and a statement of estimated just compensation" and had deposited in the court registry the sum estimated as just compensation, such that "[o]ther than the fact the initial pleading in this case was denominated a complaint rather than a declaration of tak-

ing, the proceeding in all respects partook of the nature of a declaration of taking," by which the government was bound).

**14.** Contrast, for example, the language of D.C.Code § 42–101(a) (2001) ("All powers of attorney executed in accordance with this section shall contain on the top of the front page, in bold and capital letters, the following words:").

**15.** *Canova v. Shell Pipeline Co.,* 290 F.3d 753, 758 (5th Cir.2002) (construing a declaration of taking).

declaration may be filed "with the complaint or at any time before judgment"). The statute is also clear that once the complaint and declaration of taking have been filed and the estimated just compensation has been paid into the court registry, title to the condemned property vests in the District. D.C.Code § 16–1314(b). But, unlike the condemnation statute in at least one other jurisdiction,[16] section 16–1314 does not address whether the filing of a declaration of taking and payment of estimated just compensation into the court registry must be contemporaneous. It appears that contemporaneous filing of a declaration of taking and payment into the court registry is the usual practice under the analogous federal condemnation statute,[17] and, in a Rule 28(k) letter, Ms. Oh has cited a Supreme Court case stating, in the course of describing a federal "expeditious" condemnation statute, that the government was "obliged, *at the time of the filing* [of a declaration of taking], to deposit in the court ... an amount of money equal to the estimated value of the land." *Kirby*, 467 U.S. at 4–5, 104 S.Ct. 2187 (emphasis added). In interpreting our local statute, however, we are not bound by federal practice or by that case law. As a practical matter (and as the trial court reasoned), as of November 18, 2005, NCRC had the "same authority ... to perform a quick-take condemnation under Section 16–1314" as it had on July 8, 2005, such that it "could easily and immediately [have] obtain[ed] legal title to the property" filing a new declaration on the date (November 18, 2005) it paid its estimate of just compensation into the court registry. That being the case, it would amount to an elevation of form over substance for us to hold that NCRC either had to withdraw its July 8, 2005 declaration and re-file it on the same day it made its deposit into the court registry,[18] or had to include all the content of its July 8, 2005 declaration in the supplemental notice that it filed on November 18, 2005, in order for the November 18 filing and accompanying deposit to result in a "quick-take" of the Property.[19] More important, as the District points out, Ms. Oh has not identified any way in which she was prejudiced by "the four-month interim between the filing of the declaration and the deposit of estimated just compensation" or by the two-step process that NCRC employed. For these reasons, we are not persuaded that we should read into section 16–1314(b) a rigid contemporaneity requirement (although

---

16. *See* N.J. Stat. § 20:3–18 (2001) (providing that "[s]imultaneously with the filing of the declaration of taking, the condemnor shall deposit the amount of such estimated compensation with the clerk of the court").

17. *See, e.g., United States v. 9.20 Acres of Land*, 638 F.2d 1123, 1124 (8th Cir.1981) ("On September 16, 1977, the Secretary of the Army filed a declaration of taking ... $13,000 was deposited in the district court registry on September 16, 1977."); *United States v. 9.25 Acres of Land*, 2008 WL 5110613, at *2, 2008 U.S. Dist. LEXIS 97992, at *4 (E.D.Mo. Dec. 3, 2008) ("On April 5, 2006 the United States of America filed its Complaint and deposited into the Court Registry the sum of $17,000[.]").

18. In other contexts, we have not required such re-filings where they would amount to an elevation of form over substance. *See, e.g., Childs v. Purll*, 882 A.2d 227, 232 (D.C.2005) (explaining that while a notice of appeal is premature and subject to dismissal if it is filed during the pendency of a timely motion to alter or amend a judgment pursuant to Rule 59(e), in cases where the trial court rules on the motion to alter or amend its judgment before this court disposes of the premature appeal, this court treats the premature notice of appeal as effectively permitting us to rule on the initial appeal, without requiring that a new notice of appeal be filed).

19. Thus, we reject Ms. Oh's contention that the July 8 and November 18, 2005 declarations "cannot somehow be combined."

we do not mean to foreclose the possibility of circumstances in which a delay between the filing of a declaration of taking and payment of estimated just compensation or a piecemeal approach would be prejudicial to the property owner, such that the government might properly be required to begin anew). We conclude that the trial court did not err in determining that title to the Property transferred to NCRC on November 18, 2005, when NCRC tendered payment of the estimated just compensation amount and filed its accompanying notice that the amount was "for the Property delineated in the Declaration of Taking filed in this action on July 8, 2005."

■ We also reject Ms. Oh's argument that the District did not acquire the property because "[t]here is no document in the Recorder of Deeds which shows that the District of Columbia has title to the property." D.C.Code § 16–1314(b) provides that title "shall vest in the District of Columbia" upon the filing and deposit described in the statute, without regard to recordation. Moreover, even where recordation is required to give a grantee of real property good title as against third parties, it is not required for good title against the party from whom the property has been transferred.[20]

■ Ms. Oh further contends that the trial court erred in ordering her to vacate the property by September 1, 2010, asserting that it will be very difficult and expensive for her to relocate, and that she should not have to do so until all of the litigation relating to the Skyland Project

ends. While we are sympathetic to Ms. Oh's position, title vested in the District in 2005, and we are also mindful that the court issued an order in 2006 declaring the District's right to immediate possession. The trial court would have been well within its discretion in considering that Ms. Oh has had ample notice and time to make arrangements to vacate the property. Accordingly, we cannot find that the court abused its discretion in ordering her to vacate the property by September 1, 2010.

### C. The Trial Court's Evidentiary Rulings

■ Ms. Oh next argues that the trial court erroneously granted the District's motion in limine to exclude evidence of post-taking comparable sales and evidence of the sales prices NCRC paid for three other properties within the Skyland site. We address each type of evidence in turn.[21]

■ Ms. Oh's appraiser valued her property on two different dates: November 18, 2005, the date of the taking, and a date in 2008, when the appraiser inspected the Property. The appraiser used a different set of comparable sales to conduct each valuation. At a hearing in March 2009, the trial court said to Ms. Oh's counsel, "[W]e're not going to use the 2008 [comparable sales evidence]. You agree with that, don't you?" Ms. Oh's counsel replied: "That's fine. I have no problem with that." Counsel for the District responded that the appraisal report needed

20. Cf. Lumpkins v. CSL Locksmith, LLC, 911 A.2d 418, 425 (D.C.2006) (explaining that the recording statute, D.C.Code § 42–401 (2001), "in essence deals with ... recordation as protection[] for creditors and subsequent bona fide purchasers, specifying that against those persons 'a deed conveying an interest in real property is not effective ... unless it is recorded.... Those requirements do not bar the operation of a ... deed against parties and their assignees.' ") (citations and internal quotation marks omitted).

21. We review a trial court's rulings on motions in limine to exclude evidence for abuse of discretion. Coulter v. Gerald Family Care, P.C., 964 A.2d 170, 185 n. 11 (D.C.2009).

"to be redacted to remove all reference to opinion and the factual basis for that opinion for the value in 2008." Ms. Oh's counsel again said, "[t]hat's not a problem." Now, however, Ms. Oh assigns as error the court's exclusion of this evidence. We reject this claim because, as "we have repeatedly held[,] ... a defendant may not take one position at trial and a contradictory position on appeal." *Brown v. United States,* 627 A.2d 499, 508 (D.C.1993).

██ The second exclusion at issue is the evidence of sales prices that NCRC paid to owners of three other properties at Skyland located on the same street as and close to Ms. Oh's property. The prices for those three properties were $624,000 for the sale of a 1,598 square foot property (paid "in anticipation of condemnation"); $828,000 for the sale of a 1,594 square foot property; and $700,000 for the settlement price of a 2,116 square foot property. The District filed a motion *in limine* objecting to the introduction of this evidence at trial, arguing that the prices were the result of compromise, and that *Hannan v. United States,* 131 F.2d 441 (D.C.Cir.1942), barred its introduction.

Landowner Hannan sought to introduce evidence showing the price the government paid for parcels of land, similarly situated with Hannan's property, on a site being taken under eminent domain. *Hannan,* 131 F.2d at 442. The trial court excluded the evidence, and the D.C. Circuit affirmed the court's ruling, holding that "the burden is upon the party who offers such evidence to establish as a preliminary fact that the purchase, concerning which evidence is offered, was made without compulsion, coercion or compromise." *Id.; see also District of Columbia Redevelopment Land Agency v. 61 Parcels of Land,* 235 F.2d 864 (D.C.Cir.1956) (explaining that a comparable sale is not under "compulsion, coercion, or compromise"

if it is shown that the public records "do not disclose that the sale was at foreclosure, under deed of trust securing an indebtedness, at execution or attachment, at auction, under pressure of the exercise of the power of eminent domain, or [under] other coercion").

Here, Ms. Oh's counsel acknowledged that the sales prices of the other Skyland properties in question reflected "settlement[s]" at a price "20 percent above the appraised value" of the properties, and the trial court also observed that the prices reflected "compromise." Notwithstanding this, Ms. Oh argues that the D.C. Circuit's subsequent holding in *Nash v. District of Columbia Redevelopment Land Agency,* 395 F.2d 571 (D.C.Cir.1967), required the court to admit evidence of the sales prices as offered by Ms. Oh, the landowner. In *Nash,* the district court admitted evidence of a condemnation settlement offered into evidence by the owner of the property at issue. *Id.* at 572. The D.C. Circuit upheld the court's ruling, stating that "[t]he reasons which disable a condemnor from putting in evidence of purchases it has made in settlement of condemnation suits have no application to a landowner who offers such evidence himself." *Id.* at 572 n. 6.

██ We conclude that the record permits us to resolve the issue raised without attempting to reconcile the holdings in *Hannan* and *Nash.* In granting the District's motion to exclude the settlement sales-price evidence, the trial judge explicitly stated that he was "mak[ing] a discretionary call" and concluded that the evidence would be excluded as "too prejudicial." The court reasoned that introduction of the evidence would bias the District by requiring it to explain its compromise decision and "what's going on with the government" and would occasion a "frolic and detour" that would "bias"

the District.[22] As recognized in *Hannan*, the trial court "is vested with large discretion in the admission and exclusion of evidence" and has "discretion to exclude ... evidence when it ... involve[s] a confusion of issues." 131 F.2d at 443. Further, as this court has recognized, "[t]he weighing of probative value versus prejudice must always be part of the trial judge's consideration, and the trial judge has the discretion to exclude evidence ·if its probative value is substantially outweighed by the danger of unfair prejudice." *Plummer v. United States*, 813 A.2d 182, 189 (D.C.2002); *see also Johnson v. United States*, 960 A.2d 281, 300 n. 18 (D.C.2008) ("[A] trial court must always consider the extent to which a party may be prejudiced by the admission of any evidence[.]"). Having found that the evidence of settlement sales prices would be prejudicial, the court did not err in excluding the evidence, even if the evidence was otherwise admissible.

## D. Jury Award Confirmation

During trial in October 2009, the jury viewed the property, and the parties presented evidence of its fair market value at the time of the taking on November 18, 2005. The jury heard testimony from two appraisers. The first, called by the District, opined that the fair market value of the property at the time of the taking was $135,000. The second, called by Ms. Oh, testified that the fair market value of the property at the time of the taking was $225,000. In addition, Ms. Oh testified to her opinion, based on her conversations with her neighbors, that the fair market value of the property at the time of the taking was $600,000. The jury reached a verdict that the fair market value of the

property at the time of the taking was $160,000. The trial court confirmed the jury's award, finding that "[t]his figure was within the range of the expert appraiser testimony at trial, and is therefore neither unjust nor unreasonable."

The trial court "may vacate and set aside the [jury's] appraisement, in whole or in part, when satisfied that it is unjust or unreasonable." D.C.Code § 16–1318(a) (2001). "This grants a broad discretion to the lower court[,]" *Johnson & Wimsatt, Inc. v. Hazen*, 99 F.2d 384, 386 (D.C.Cir.1938), and thus our review is for abuse of discretion. We find none. Indeed, the only argument that Ms. Oh has advanced for vacating the trial court's confirmation of the jury's appraisement is that the taking did not occur on November 18, 2005, an argument we have rejected. *See supra*. The jury reached a valuation within the range established by the divergent appraisers' estimates, a fact that makes applicable the rule that "[i]n a condemnation case, when the jury reached 'a valuation from the evidence which the trial court confirms, it is not for us to say that it is so inadequate that the trial court abused its discretion....'" *Certain Land in Washington v. United States*, 355 F.2d 825, 826 (D.C.Cir.1965) (quoting *Murray v. United States*, 130 F.2d 442, 444 (1942)).

## E. Rent

Once title to a property has vested in the District, the trial court "may make such orders in respect of incumbrances, liens, rents, taxes, assessments, insurance, and other charges, if any, as it deems just and equitable." D.C.Code § 16–1316 (2001). Here, the trial court ordered Ms. Oh to pay monthly rent of $1,590 from the date of the taking through the date she

---

**22.** Not only did Ms. Oh's counsel not object to the court's statement, but she stated that "it would be acceptable" to introduce evidence of the appraised values of the three other ·properties rather than their sale or settlement values "if that would be easier to accept."

surrenders possession of the property to the District. Ms. Oh contends that this ruling was erroneous, arguing that because she and the District did not have an agreement stating that she owed rent, she has no rent obligation.

 Ms. Oh relies on this court's statement in *Nicholas v. Howard*, 459 A.2d 1039, 1040 (D.C.1983), that "absent an agreement to pay rent, the tenant is not under any obligation to pay rent." Her reliance on that language is unavailing, because, as we recognized in *Nicholas*, even in such a circumstance, the property owner may recover "the reasonable worth of use and occupation." *Id.* (quoting Restatement (Second) of Property, Landlord and Tenant § 12.1, cmt. b (1977)). Moreover, the condemnation statute expressly gives the trial court the authority to issue orders regarding "rents . . . and other charges." D.C.Code § 16–1316 (2001). Whether expressly termed "rent" or not, in a condemnation action, the "court should order the payment of reasonable compensation to the Government" in the form of "equitable rent." *Certain Land in Washington v. United States*, 355 F.2d 825, 826 (D.C.Cir.1965); see also *United States v. Certain Interests in Prop.*, 302 F.2d 201, 203 (2d Cir.1962) (noting that even without an agreement to pay, "the equities would demand an accounting"). The order of the trial court did just that, having the purpose of reimbursing the District for the reasonable worth of Ms. Oh's use and occupation of the Property on and after November 18, 2005, the date of the taking.

The court acted well within the statutory guidelines and within its discretion in setting the rent amount.[23]

 Ms. Oh's argument that the District's motion for payment of rent is barred by laches is unpersuasive. "Laches is a species of estoppel, being defined as the omission to assert a right for an unreasonable and unsatisfactorily explained length of time under circumstances prejudicial to the party asserting laches." *Embassy Real Estate Holdings, LLC v. District of Columbia Mayor's Agent For Historic Pres.*, 944 A.2d 1036, 1049 (D.C.2008) (citation and internal quotation marks omitted). To succeed on a laches defense, Ms. Oh must "prove inexcusable delay which has resulted in substantial prejudice[.]" *Wieck v. District of Columbia Bd. of Zoning Adjustment*, 383 A.2d 7, 11 (D.C.1978). The District concedes that its motion for rent should have been filed with the NCRC's motion for immediate possession in December 2005, and we cannot disagree. However, Ms. Oh has not shown, or even suggested, how she was substantially prejudiced by the District's and NCRC's delay in asserting its claim for rent. She has not, for example, explained what, if anything, she would have done differently if she had known earlier that the District would undertake to recover rent from the date of the taking (i.e., the date when NCRC paid into the court registry the funds representing its estimate of just compensation). She therefore cannot prevail on her laches argument.[24]

---

**23.** Ms. Oh argues that the calculations of rents in the appraisals were assumptions used to determine the fair market value of the property, and "were not intended to be the amount of rent Ms. Oh should pay." But the appraisal report contains a detailed explanation of the calculation of the market rent, calling it a "necessary" part of the appraisal. Furthermore, the parties' appraisers agreed

on the market rent amount. On this record, we have no basis for disturbing the rent amount as ordered by the court.

**24.** In light of this disposition, we need not decide whether laches would lie if Ms. Oh had shown prejudice from NCRC's and the District's delay. Our case law, of course, recognizes that the doctrine of laches should "be

## F. The Purported Settlement with NCRC

Finally, Ms. Oh asserts that she reached a settlement agreement with NCRC under which NCRC was to pay $540,000 for the Property, and that the District had no authority to withdraw the agreement that she reached with NCRC before the District was substituted as condemnor. She argues the trial court erred in declining to enforce that (purported) agreement.

■ The trial court ruled on Ms. Oh's motion to enforce the settlement agreement in open court, and the parties have neither provided us with the transcript of that proceeding nor given us an agreed statement of the rationale for the court's ruling. As a result, we have no basis for reviewing the court's ruling. The ruling must stand undisturbed, because it was Ms. Oh's responsibility as appellant to "provide this court with a record which affirmatively shows that error occurred." *P.F. v. N.C.*, 953 A.2d 1107, 1119 (D.C. 2008).

■ What we can say from the record before us is that we see no basis for concluding that the trial court obviously erred in denying the motion. Contract law governs settlement agreements, *T Street Dev., LLC v. Dereje & Dereje*, 586 F.3d 6, 11 (D.C.Cir.2009), and a valid contract requires "both (1) agreement as to all material terms; and (2) intention of the parties to be bound." *Jack Baker, Inc. v. Office Space Dev. Corp.*, 664 A.2d 1236, 1238 (D.C.1995) (internal quotation marks omitted). While Ms. Oh asserts that she reached such a valid agreement with NCRC (and had the burden of proving that a contract existed, *see EastBanc, Inc. v. Georgetown Park Assocs. II, L.P.*, 940 A.2d 996, 1002 (D.C.2008)), the District cites an affidavit of NCRC Project Manager Nkosi Bradley, which the District presented to the trial court, avowing that his "settlement negotiations with Ms. Oh" "concluded without the parties reaching an agreement."

The only other evidence in the record before us pertaining to the purported agreement is a September 27, 2007 email to Mr. Bradley from Ms. Oh's counsel purporting to "confirm[ ] our discussion today that the Oh condemnation case will be settled and the settlement amount is $540,000." In *Rumber v. District of Columbia*, 598 F.Supp.2d 97 (D.D.C.2009),

---

narrowly applied against the government," *Embassy*, 944 A.2d at 1049, and generally "is not applicable to a government agency acting to protect a public interest." *Gropp v. District of Columbia Bd. of Dentistry*, 606 A.2d 1010, 1016 (D.C.1992); *see also New 3145 Deauville, L.L.C. v. First Am. Title Ins. Co.*, 881 A.2d 624, 629 (D.C.2005) ("[N]either laches nor statutes of limitations will constitute a defense to suit by the [District] in the enforcement of a public right."); *District of Columbia v. Owens-Corning Fiberglas Corp.*, 572 A.2d 394, 401 (D.C.1989) (explaining that this rule "expresses a legitimate public policy of preserving 'public rights, revenues, and property from injury or loss, by the negligence of public officers'") (quoting *Guaranty Trust Co. v. United States*, 304 U.S. 126, 132, 58 S.Ct. 785, 82 L.Ed. 1224 (1938)); *Block v. North Dakota*, 461 U.S. 273, 295, 103 S.Ct.

1811, 75 L.Ed.2d 840 (U.S.1983) (noting that the public policies served by the rule "reach their apex in the case of lands held in trust for the public."); *cf. Washington Bancorporation v. Said*, 812 F.Supp. 1256, 1258 (D.D.C.1993) ("[L]aches defenses are not typically applicable against government instrumentalities[.]"). That said, the statutory authority for the court to assess rent "as it deems just and equitable," D.C.Code § 16–1316, appears to require the trial court to take into account equitable considerations, such as the doctrine of laches recognizes. We leave for another day the issue of the applicability, *vel non*, of the doctrine of laches when asserted against the government or a government instrumentality after it has acquired title through a condemnation proceeding.

another Skyland eminent domain case, the federal District Court for the District of Columbia held that a purported settlement agreement for the condemnation of property was "a contract concerning real estate," subject to the statute of frauds, D.C.Code § 28–3502 (2001),[25] and that a writing that purported to memorialize a settlement agreement with NCRC was not enforceable since it was "not signed by a representative for [the District and NCRC]." 598 F.Supp.2d at 105. Ms. Oh has not shown why the same conclusion would not apply with respect to the email memorializing her purported settlement agreement with NCRC.

For the foregoing reasons, the judgment of the Superior Court is

*Affirmed.*

---

**25.** Section 28–3502 provides that "[a]n action may not be brought ... upon a contract or sale of real estate [or] of any interest in or concerning it ... unless the agreement upon which the action is brought, or a memorandum or note thereof, is in writing, which need not state the consideration and signed by the party to be charged[.]"