Peter DeSILVA, et al., Appellants,

v.

**DISTRICT OF COLUMBIA, Appellee.**

No. 10–CV–1069.

District of Columbia Court of Appeals.

Argued Feb. 2, 2011.

Decided Feb. 24, 2011.

Elaine J. Mittleman, for appellants.

Carl J. Schifferle, Assistant Attorney General, District of Columbia, with whom Peter J. Nickles, Attorney General at the time the brief was filed, Todd S. Kim, Solicitor General, and Donna M. Murasky, Deputy Solicitor General, were on the brief, for appellee.

Before REID and FISHER, Associate Judges, and PRYOR, Senior Judge.

1. See Duk Hea Oh v. National Capital Revitalization Corp., 7 A.3d 997 (D.C.2010); Franco v. District of Columbia, 3 A.3d 300 (D.C.2010) (Franco II ); Franco v. National Capital Revitalization Corp., 930 A.2d 160 (D.C.2007) (Franco I ).

2. See, e.g., Rumber v. District of Columbia, 389 U.S.App.D.C. 242, 595 F.3d 1298 (2010), Rumber v. District of Columbia, 598 F.Supp.2d 97 (D.D.C.2009); Rumber v. District of Columbia, 376 U.S.App.D.C. 255, 487 F.3d 941 (2007), Franco v. District of Columbia, 422 F.Supp.2d 216 (D.D.C.2006).

3. DeSilva v. District of Columbia, Nos. 09–CV–895 & 10–CV–752 (D.C. August 19, 2010).

REID, Associate Judge:

Appellants Peter DeSilva, Joseph Rumber, and Rose Rumber (collectively "appellants") appeal the trial court's final judgment in this case in favor of appellee, the District of Columbia. This is yet another case presented to this court involving the redevelopment of the Skyland Shopping Center ("Skyland") and the condemnation of private property for that purpose by the National Capital Revitalization Corporation ("NCRC") under the doctrine of eminent domain.[1] The federal courts in this jurisdiction also have heard cases pertaining to NCRC and Skyland.[2] In addition, we previously considered two appeals in the instant case: Nos. 09–CV–895 and 10–CV–752.[3]

In the appeal before us, appellants assign multiple errors to the trial court relating to the acquisition of the property at issue and to evidentiary trial court rulings. We affirm the judgment of the trial court in favor of the District for the reasons stated below.

**FACTUAL SUMMARY**

We do not repeat much of the background regarding the history of the condemnation proceeding in this case since we detailed that history both in Oh, supra, and Franco I, supra. The record in this

The August 19, 2010 judgment dismissed No. 10–CV–752 "as having been prematurely filed." The judgment further granted the District of Columbia's motion for summary affirmance in No. 09–CV–895, which was filed pursuant to D.C.Code § 11–721(a)(2)(C) (2001) as an interlocutory appeal of an order "changing or affecting the possession of property." That appeal concerned the trial court's order of June 18, 2009, granting possession of the property in question in this case to the District and ordering two of the appellants to pay the District $1750.00 per month in rent during their continued occupancy.

case reveals that pursuant to authority granted to it by the National Capital Revitalization Corporation Eminent Domain Clarification and Skyland Eminent Domain Approval Amendment Act of 2004, D.C. Law No. 15–286, 52 D.C.Reg. 4567 (2005), NCRC filed a complaint on July 8, 2005, to condemn property owned by Mr. DeSilva at 2648 Naylor Road, in the Southeast quadrant of the District of Columbia. Joseph and Rose Rumber were Mr. DeSilva's commercial tenants and they operated a liquor store on the premises. NCRC attached to its complaint a sworn declaration executed by the chief executive officer of NCRC at the time, Anthony C. Freeman, who estimated that "the sum of $600,000[ ] would constitute just compensation" for Mr. DeSilva's property. NCRC provided notice, on November 18, 2005, that it had deposited $600,000.00 into the trial court's registry. On May 8, 2006, the trial court entered an order declaring "that, as of November 18, 2005, legal title to the fee simple interest in the [Naylor Road] Property vested in the NCRC."

Mr. DeSilva's Answer to NCRC's complaint raised several affirmative defenses which mirrored those in *Oh, supra.*[4] After the trial court struck Mr. DeSilva's affirmative defenses, as the trial court had done in other cases involving Skyland, the trial judge distributed $600,000.00 to Mr. DeSilva from the court's registry on November 1, 2006.

By Fall 2007, NCRC had been dissolved and its authority had been transferred to the Mayor of the District of Columbia. *See* D.C.Code § 2–1225.01(a) (2010 Supp.). The District proceeded, on October 24, 2007, to amend the complaint that NCRC filed against Mr. DeSilva by adding the Rumbers as defendants. The Rumbers raised a number of affirmative defenses to the complaint and they moved to dismiss themselves as defendants.

NCRC had obtained two appraisals from Millenium Real Estate Advisors, Inc. The first appraisal established the estimated value of the property at $600,000.00 as of September 2004, and the second, dated April 5, 2006, estimated the fair market value of the property at $575,000.00 as of November 18, 2005. Because of perceived flaws in the Millenium appraisal, the District engaged David Lennhoff and PGH Consulting LLC to prepare a new appraisal estimating the value of the Naylor road property as of November 18, 2005. PGH issued a report, dated February 25, 2008, estimating the fair market value of the property as of that date at $285,000.00.

As the litigation unfolded, the motions court, the Honorable Lynn Leibovitz, issued an omnibus order on June 9, 2008, denying the Rumbers' motion to dismiss them as defendants, and granting the District's motion for summary judgment concerning the validity of the taking. Furthermore, in preparation for trial, Mr. DeSilva lodged a motion *in limine* to preclude the District from introducing the PGH appraisal into evidence. The District sought to prevent any mention of the $600,000.00 that NCRC had deposited in the court registry, and further moved for immediate possession of the Naylor Road property. As we have indicated in note 3, *supra,* the trial court, the Honorable Anita Josey–Herring, granted the District's motion and ordered the Rumbers to vacate the property; the court's order specified that they would have to leave by December 18, 2009, and in the meantime would have to pay $1,750.00 per month in rent ($10.00 more than the rent established by Mr. DeSilva) to the District. The court also ruled that NCRC's $600,000.00 estimated value could be introduced so long as that number was not linked to the District. The court later revised its ruling to exclude the

---

4. Appellants' counsel in this case also repre- sented the appellant in *Oh.*

$600.000.00 (pre-condemnation sum placed in the court's registry as just compensation) but indicated that Mr. DeSilva could present opinion testimony as to the value of his property.

Evidence introduced at trial included testimony by Mr. DeSilva's expert, Alfred B. Riley, Jr., that the fair market value of the Naylor Road property was $680,000.00 as of November 18, 2005, and Mr. Lennhoff's testimony putting the fair market value at $285,000.00 as of that date. The jury returned an appraisement of $304,445.95. Judge Josey–Herring rejected Mr. DeSilva's challenge to the verdict and on June 8, 2010, the court entered a final judgment in favor of the District in the amount of $306,748.54, "which is the sum of the $295,554.54 overpayment of the District's initial deposit [$600.000] ... plus $11,194.00 in rent for the property paid to [Mr.] DeSilva instead of the District after the taking." Judge Josey–Herring granted the District's motion to amend/correct judgment and on August 16, 2010, amended its judgment "to include judgment against defendants, Rose and Joseph Rumber in the amount of $84,006.00 in favor of the District of Columbia," covering back rent due and owing.

## ANALYSIS

### The Taking Process Issues and the Issues Relating to the Order to Vacate the Property and to Pay Rent

Mr. DeSilva raises three issues regarding the taking process; these issues relate to NCRC's declaration of taking, the statutory quick-take procedure, and the Recorder of Deeds. The Rumbers raise challenges to the trial court's order that they vacate the Naylor Road property and pay $1,750.00 in monthly rent.[5] These issues were raised in appellants' interlocutory appeal, No. 09–CV–895. The District filed a motion for summary affirmance of that appeal, arguing that (1) the District properly obtained title to that property under the process set forth in the District's eminent domain statute, D.C.Code § 16–1314 (2001); (2) the trial court did not abuse its discretion by ordering that the Rumbers vacate the Naylor Road property; and (3) the court did not abuse its discretion by ordering the Rumbers to pay $1,750.00 in monthly rent until they actually vacated the property.

We granted the District's motion for summary affirmance on August 19, 2010, and subsequently, we denied appellants' motion for rehearing. Hence, the issues raised in that appeal, including those involving the taking process as well as the trial court's order that the Rumbers vacate the Naylor Road property and pay rent, already have been resolved against appellants and may not be considered in this litigation. See Thoubboron v. Ford Motor Co., 809 A.2d 1204, 1215 (D.C.2002) (citing Lynn v. Lynn, 617 A.2d 963, 970 (D.C. 1992) (law of the case doctrine generally forecloses consideration of an issue re-

---

5. We are not persuaded by the Rumbers' argument that the trial court committed error by allowing them to be added as defendants in this case on October 24, 2007. They contend that they did not assert an entitlement to any of the just compensation for the taking of Mr. DeSilva's property, and that if they were to be added as defendants, under Super. Ct. Civ. R. 71A (c)(2) pertaining to condemnation of property, that should have been done in July 2005. Rule 71A (f) clearly states, in part,

"[w]ithout leave of court, the plaintiff may amend the complaint at any time before the trial of the issue of compensation and as many times as desired...." The District added the Rumbers before trial began in this case. In addition Rule 71A (c)(2) indicates that the plaintiff may add those who have "an interest in the property" and by challenging the taking of Mr. DeSilva's property, the Rumbers revealed an interest in the condemnation proceeding.

solved in a prior appeal)).[6]

We now proceed to the issues that are properly before us in this appeal.

### The Appraisal Issues

██ Mr. DeSilva contends that the trial court erred by failing to grant his motion *in limine* to exclude Mr. Lennhoff's PGH appraisal report. The District asserts that the trial court did not abuse its discretion in denying Mr. DeSilva's motion. "We review a trial court's rulings on motions *in limine* to exclude evidence for abuse of discretion." *Oh, supra*, 7 A.3d at 1009 n. 21 (citing *Coulter v. Gerald Family Care, P.C.*, 964 A.2d 170, 185 n. 11 (D.C. 2009)). "Judicial discretion must ... be founded upon correct legal principles." *Haqq v. Dancy–Bey*, 715 A.2d 911, 913 (D.C.1998) (internal quotation marks and

citation omitted); *see also Johnson v. United States*, 398 A.2d 354, 362–63 (D.C. 1979) (discussing the exercise of judicial discretion).

██ Mr. DeSilva advances several specific points regarding the trial court's denial of his motion *in limine*. First, the PGH appraisal should have been excluded because "it did not comply with pertinent appraisal standards." Specifically, he asserts that Mr. Lennhoff did not follow the federal Uniform Relocation Assistance and Real Property Acquisition Policies Act ("URA"), 42 U.S.C. § 4651.[7] While it appears that the URA is applicable to the District of Columbia,[8] the plain words of § 4651 show that the URA policies are relevant before the initiation of condemnation litigation, that is, at the time negotia-

---

**6.** We note that the same issues pertaining to NCRC's taking process for the Skyland redevelopment project were raised, addressed, and decided in favor of the District in *Oh, supra*, 7 A.3d at 1007–09.

**7.** 42 U.S.C. § 4651 provides in pertinent part: In order to encourage and expedite the acquisition of real property by agreements with owners, to avoid litigation and relieve congestion in the courts, to assure consistent treatment for owners in the many Federal programs, and to promote public confidence in Federal land acquisition practices, heads of Federal agencies shall, to the greatest extent practicable, be guided by the following policies:

(1) The head of a Federal agency shall make every reasonable effort to acquire expeditiously real property by negotiation.
(2) Real property shall be appraised before the initiation of negotiations, and the owner or his designated representative shall be given an opportunity to accompany the appraiser during his inspection of the property, except that the head of the lead agency may prescribe a procedure to waive the appraisal in cases involving the acquisition by sale or donation of property with a low fair market value.
(3) Before the initiation of negotiations for real property, the head of the Federal agen-

cy concerned shall establish an amount which he believes to be just compensation therefor and shall make a prompt offer to acquire the property for the full amount so established. In no event shall such amount be less than the agency's approved appraisal of the fair market value of such property. Any decrease or increase in the fair market value of real property prior to the date of valuation caused by the public improvement for which such property is acquired, or by the likelihood that the property would be acquired for such improvement, other than that due to physical deterioration within the reasonable control of the owner, will be disregarded in determining the compensation for the property. The head of the Federal agency concerned shall provide the owner of real property to be acquired with a written statement of, and summary of the basis for, the amount he established as just compensation. Where appropriate the just compensation for the real property acquired and for damages to remaining real property shall be separately stated.

**8.** *See* 42 U.S.C. § 4601(2) including the District of Columbia in the definition of "State" and 42 U.S.C. § 4655(a)(1) which requires that states receiving federal financial assistance "be guided, to the greatest extent practicable under State law, by the land acquisition policies in section [4651]" of this title.

tions commence for the acquisition of land. For example, § 4651(3) uses the phrase "[b]efore the initiation of negotiations" and the introductory paragraph to § 4651 specifies that one purpose of the URA policies is "to avoid litigation and relieve congestion in the courts." One court has stated emphatically:

> Section 4651 does not relate to takings by eminent domain. Rather, the statute explicitly encourages federal agencies to negotiate for the purchase of real property in an effort to avoid eminent domain actions, and sets guidelines—to be followed "to the greatest extent possible"—for agencies negotiating such purchases.

*Tennessee Gas Pipeline Co. v. New England Power, C.T.L., Inc.*, 6 F.Supp.2d 102, 104 (D.Mass.1998) (citing 42 U.S.C. § 4651). Moreover, courts have held that § 4651 "creates no rights in landowners [and] in essence is no more than a statement by Congress of what it perceives to be the preferred method of dealing with landowners when the Government wants to acquire their land." *United States v. 410.69 Acres of Land*, 608 F.2d 1073, 1074 n. 1. (5th Cir.1979) (citing 42 U.S.C. § 4602(a));[9] *see also United States v. 416.81 Acres of Land*, 525 F.2d 450, 454 (7th Cir.1975) (Section 4651 "is entirely exhortatory"). In *416.81 Acres of Land*, appellants argued that the testimony of the government's appraisers should be excluded because they did not comply with the request that the landowners accompany the appraisers during their visit to the property, as the URA's implementing regulations require.[10] *Id.*, 525 F.2d at 454. Mr. DeSilva makes essentially the same argument with respect to Mr. Lennhoff's visit to his property. The court rejected the argument in light of 42 U.S.C. § 4602(a) and because of the court's conclusion that § 4651 "is entirely exhortatory." *Id.*

■ Second, Mr. DeSilva complains about the statement in the PGH appraisal report "that the market has increased at roughly 3% per year"; he maintains that there is no reliable factual basis for that assumption. Our review of the record reveals that Mr. DeSilva did not raise these points in the trial court. Therefore, he has waived them. *See Comford v. United States*, 947 A.2d 1181, 1189 n. 32 (D.C. 2008) (citing *United States v. McVeigh*, 153 F.3d 1166, 1200 (10th Cir.1998) ("motion *in limine* will not preserve an objection unless it is renewed at the time the evidence is introduced" unless the issue was fairly presented to the court and can be determined in a pretrial hearing)).

Third, Mr. DeSilva argues that "[t]he District has not established that the PGH appraisal has been certified as the agency's approved appraisal [and] [w]ithout such certification, the agency's approved appraisal remains the Millenium appraisal which set the fair market value at $600,000." The first Millenium appraisal was conducted as part of NCRC's negotiations with Mr. DeSilva to acquire his property prior to the commencement of a condemnation proceeding. Mr. DeSilva did not accept the District's offer of $600,000.00. After authority for the rede-

---

9. 42 U.S.C. § 4602(a) states: "The provisions of [42 U.S.C. § 4651] create no rights or liabilities and shall not affect the validity of any property acquisitions by purchase or condemnation."

10. The implementing regulations of the URA provide, in part: "Before the initiation of negotiations the real property to be acquired shall be appraised ..., and the owner, or the owner's designated representative, shall be given an opportunity to accompany the appraiser during the appraiser's inspection of the property." 49 C.F.R. § 24.102 (2010).

velopment of Skyland was transferred to the District, the District perceived flaws in the Millenium appraisal and turned to PGH Consulting for an appraisal. As Mr. DeSilva notes in his brief, there is conflicting authority as to whether a pre-condemnation proposed offer to compensate a landowner for his property is admissible at trial as proof of the land's value. *See Washington Metro. Area Transit Auth. v. One Parcel of Land in Montgomery Cnty., Maryland,* 548 F.2d 1130, 1131 (4th Cir. 1977) ("We hold that a landowner who rejects a pre-condemnation offer made pursuant to [42 U.S.C. § 4651] may not introduce that offer as proof of value when the government condemns the property."); *Washington Metro. Area Transit Auth. v. One Parcel of Land in Prince George's Cnty.,* 342 F.Supp.2d 378, 382 (D.Md.2004) (pre-condemnation appraisal allowed into evidence with reference to the appraiser's relationship to the government excluded, but pre-condemnation offer to landowner excluded from evidence).

 Here, Judge Josey–Herring did not exclude all evidence of the pre-condemnation estimated value of the property. After listening to the parties and reviewing case law, she ruled as follows:

> Based on the arguments of plaintiff's counsel, I do believe that it is appropriate to reverse my earlier decision that indicated that the $600,000 deposit into the court's registry could be presented to the jury as having been made by the District as evidence of but not dispositive of, as evidence of just compensation for the taking in this case. However, I will not make a finding that the defendant in this case, or any party for that

matter, may not, in light of the Government's arguments, seek to present a witness to testify as to an opinion regarding the value of the property.

> . . . .

> Effectively, I've reversed my finding . . . in my July 23, 2009 order, that the $600,000 deposit made into the [c]ourt's registry by the District is just compensation, can be used by the defendant as evidence of the fair market value of the property at the time of the taking. However, I did indicate that—just so that my order is clear—that I did not make a finding that defendant could not present or plaintiff, for that matter, opinion testimony as to what the value of . . . the property is. That's certainly permissible in any event. So that's my ruling.

We discern no abuse of discretion in the trial court's ruling. *See Delaware v. Rittenhouse,* 634 A.2d 338, 342 (Del.1993) (declaring after a review of federal case law: "We hold that the sum deposited into the Superior Court by a governmental authority . . . is not admissible in a subsequent condemnation proceeding as evidence of just compensation.") (citation omitted); *see also United States v. 75.13 Acres of Land,* 693 F.2d 813, 817 (8th Cir.1982) (concluding with respect to money deposited with the court as just compensation: "It is settled . . . that this 'estimated compensation' is not evidence of the value of the property taken") (citation omitted). Furthermore, we see nothing in the District's eminent domain statute that required the District to certify the PGH appraisal "as the agency's approved appraisal," and Mr. DeSilva cites no authority for this proposition.[11]

---

11. Apparently, Mr. DeSilva's argument about certification stems from language in 42 U.S.C. § 4651(3) that an agency's offer to a landowner in the pre-condemnation negotiation period should not be "less than the agency's ap-

proved appraisal of the fair market value of [the] property." As we have established above, the URA policies or guidelines apply in the pre-condemnation negotiation for the ac-

■ Fourth, Mr. DeSilva asserts that the PGH appraisal should have been excluded because "[t]he comparable sales used in [it] are not comparable to" the Naylor Road property; "[t]he PGH appraisal is . . . difficult to credit as reliable and accurate" due to vague and unsubstantiated "qualitative adjustments, data and assumptions"; and his expert, Mr. Riley, "testified about the structural flaws in one of the comparable sales in the PGH appraisal." In terms of our review of these contentions, we are mindful that "the trial court 'is vested with large discretion in the admission and exclusion of evidence.' " *Oh, supra*, 7 A.3d at 1011 (citing *Hannan v. United States*, 76 U.S.App.D.C. 118, 120, 131 F.2d 441, 443 (1942)). Significantly, "[t]he weighing of the evidence in a condemnation proceeding is within the sole purview of the fact-finder, and it is not for this court to reweigh the evidence." *United States v. 6,162.78 Acres of Land*, 680 F.2d 396, 398 (5th Cir.1982) (citation omitted). Mr. DeSilva's arguments relating to the PGH appraisal pertain to the weight of that evidence. It was within the province of the jury to examine and determine the weight of testimony by Mr. Lennhoff and Mr. Riley. We see no abuse of discretion in the trial court's admission of Mr. Lennhoff's testimony and PGH's appraisal, and there is no legal basis for the appellate court to substitute its analysis of the expert testimony presented for that of the jury.

■ Finally, Mr. DeSilva insists that the trial court should have admitted into evidence the assessed value of the Naylor Road property, as determined by the District's Office of Tax and Revenue. But,

*Johnson & Wimsatt, Inc. v. Reichelderfer*, 60 App.D.C. 186, 187, 50 F.2d 336, 337 (1931), a case that is binding on us,[12] declared: "It is widely recognized that appraisements of property by tax assessors for purposes of taxation are not reliable guides of market value, and consequently not admissible in condemnation proceedings." Thus, Mr. DeSilva's attack on the rationale of *Johnson & Wimsatt*, as well as his citation to contrary case law in other jurisdictions, cannot succeed.

### The Jury Appraisement Issue

■ Mr. DeSilva claims that "[t]he trial court erred in denying [his] objections to the jury appraisement." He takes the position that the capitalization rate used by [Mr.] Lennhoff and relied upon by the jury is "unreasonable and not supported by competent evidence." We review the trial court's confirmation of a jury award for abuse of discretion. *Oh, supra*, 7 A.3d at 1011. D.C.Code § 16–1318(a) authorizes the trial court to "vacate and set aside the [jury's] appraisement, in whole or in part, when satisfied that it is unjust or unreasonable." Based upon our review of the record, we discern no abuse of discretion. The jury's appraisement of $304,445.95 was "within the range established by the divergent appraisers' estimates. . . ." *Oh, supra*, 7 A.3d at 1011.

### The Striking of Affirmative Defenses Issue and the Motions Court's Grant of the District's Summary Judgment Motion As to the Validity of the Taking of Mr. DeSilva's Property

Mr. DeSilva argues that based on this court's holding in *Franco I, supra*, "the

quisition of property, not at the condemnation phase.

12. Under *M.A.P. v. Ryan*, 285 A.2d 310 (D.C. 1971), *Johnson & Wimsatt* "constitute[s] the

case law of the District of Columbia" and "no division of this court will overrule a prior decision of this court." *Id.* at 312.

order granting the motion to strike affirmative defenses[13] in this case should be vacated and this matter should be remanded for further proceedings." He also argues that because the motions court struck his affirmative defenses, he "should have been given notice that the summary judgment motion applied to him and he should have been given an opportunity to respond." The Rumbers complain that they "should not have been required to respond to very burdensome and complex issues about taking and public use at the same time that they were claiming they should not be defendants." Appellants also argue that the motions court erred in granting summary judgment to the District on the merits of the taking issue.

We now set forth the procedural context for appellants' arguments. On May 8, 2006, the Honorable Natalia M. Combs Greene struck Mr. DeSilva's affirmative defenses because of other cases involving condemnation of property for the Skyland redevelopment in which other trial judges struck similar affirmative defenses. In *Franco I,* decided on July 12, 2007, we "conclud[ed] that the 'pretext' defense raises an issue requiring proof, and cannot be stricken for insufficient pleading." *Id.* at 162. Hence, we reversed the trial court's judgment and remanded that case to the trial court for consideration of appellant's pretext defense. In doing so, we noted that "Franco made many specific factual allegations to support this [pretext] claim...." *Id.* at 170.

The District added the Rumbers as parties on October 24, 2007. On June 9, 2008, Judge Leibovitz issued the omnibus order denying the Rumbers motion to dismiss and granting the District's motion for summary judgment. We decided *Franco*

*II, supra,* on August 26, 2010. In *Franco II,* we concluded that the trial court improperly applied the *DeSilva* trial court's ruling striking affirmative defenses in the instant case to Franco because he was not a party in this case; thus, "the trial court erred in applying issue preclusion on the pretext issue and in granting summary judgment to the District based thereon." *Franco II,* 3 A.3d at 306. In our *Oh* decision, released on November 12, 2010, we contrasted the detailed pleading of a pretext defense in *Franco I* with the conclusory language in *Oh* and determined that there was "no error in the trial court's decision to strike Ms. Oh's pretext defenses [because] [n]either Ms. Oh's answer nor the face of the complaint alleges a single fact that supports her assertion that the taking is for private use under the pretext of a public purpose." 7 A.3d at 1003.

 Judge Leibovitz issued her omnibus order prior to our decisions in *Franco II* and *Oh.* Those decisions bind us as we consider the appeal in this case. Under *Franco II,* we would be constrained to remand Mr. DeSilva's case on the ground that the trial court improperly applied issue preclusion on his pretext defense since Judge Greene, as did other Superior Court judges considering other cases, struck Mr. DeSilva's affirmative defenses based on decisions in other Superior Court cases to which Mr. DeSilva was not a party. However, we said in *Oh* that "[o]ur case law makes clear ... that for an affirmative defense to stand (in the sense of entitling the defendant to proceed with discovery as to the defense), facts establishing the elements of the defense 'must be particularized in some detail.'" 7 A.3d at 1003. Thus, under *Oh,* we are constrained to conclude that Judge Greene properly

---

**13.** Appellants raised several affirmative defenses in response to the District's complaint. However, the only affirmative defense argued

on appeal is that the taking was not for public use, but was instead a pretext for private use.

struck Mr. DeSilva's affirmative pretext defense since his articulation of that defense is identical to that of the appellant in *Oh. Id.,* 7 A.3d at 1002.

While the Rumbers' pretext defense was stated in the exact manner as in the *Oh* complaint, the District did not seek to strike their affirmative defenses, apparently because of our ruling in *Franco I.* Judge Leibovitz did not have the benefit of our decision in *Oh* when she granted the District's motion for summary judgment but, consistent with the legal principle on which this court relied in *Oh,* Judge Leibovitz should have struck the Rumbers' pretext affirmative defense instead of deciding that issue on the merits.

Appellants further claim that the trial court did not give them an opportunity to address the District's summary judgment motion. The District filed its motion for summary judgment as to the validity of the taking on February 29, 2008. Appellants submitted their opposition on March 17, 2008 and took the position that the trial court should first decide the Rumbers' motion to dismiss. In light of her broad discretion over the conduct of litigation, Judge Leibovitz was not obligated to first decide the Rumbers' motion to dismiss. Nor were appellants entitled to proceed to discovery on their pretext defense since

they failed to "particularize[ ] in some detail" "facts establishing the elements of the defense." *Id.*

But, even assuming, without deciding, that we could properly consider the merits of the taking issue and the pretext defense, we would agree with Judge Leibovitz's analysis of the issue, including her reliance on the legislative documents relating to D.C. Law No. 15–286, and her conclusion that Mr. DeSilva's property was taken for a legitimate public use and not as a pretext for private use. *See Franco I, supra; Kelo v. City of New London, Connecticut,* 545 U.S. 469, 125 S.Ct. 2655, 162 L.Ed.2d 439 (2005); *Hawaii Hous. Auth. v. Midkiff,* 467 U.S. 229, 104 S.Ct. 2321, 81 L.Ed.2d 186 (1984); D.C. Law No. 15–286 (the National Capital Revitalization Corporation Eminent Domain Clarification and Skyland Eminent Domain Approval Amendment Act of 2004).

Accordingly, for the foregoing reasons, we affirm the judgment of the trial court.

*So ordered.*